68 S.W.3d 61 (2001)
In the Interest of K.M.S., A Child.
No. 05-00-00146-CV.
Court of Appeals of Texas, Dallas.
May 10, 2001.
Rehearing Overruled June 28, 2001.
*62 Brad M. Lamorgese, Holmes, Woods, & Garza, Dallas, for Appellant.
Jack M. Pepper, Attorney At Law, Plano, for Appellee.
Before LAGARDE, KINKEADE, and O'NEILL, JJ.

OPINION
LAGARDE, Justice.
David Gernenz appeals the trial court's judgment refusing to set aside an order *63 declaring Christopher Shane Smith to be the father of K.M.S. Gernenz brings eight issues asserting the trial court erred by (a) failing to vacate an agreed order declaring Smith to be K.M.S.'s father without requiring scientific paternity testing; and (b) failing to order paternity testing of K.M.S. In his second issue, Gernenz contends that his constitutional right to due process was violated by Smith's failure to give him notice of Smith's paternity action that ultimately led to an agreed order establishing Smith's paternity of K.M.S. Because we resolve Gernenz's second issue in his favor, reverse the trial court's judgment, and remand the cause for further proceedings, we do not reach Gernenz's remaining issues. Smith brings two issues on a cross-appeal, asserting that the trial court erred by denying his motion for sanctions and by failing to hold a hearing on his motion for sanctions. We resolve Smith's issues against him.

FACTUAL BACKGROUND
In April 1997, Gernenz, who was on leave from the United States Air Force, had a sexual relationship with Korinia Sterling. Gernenz returned to duty with the Air Force and was posted to Japan. A few weeks later, Sterling learned she was pregnant. Sterling moved in with Smith, and K.M.S. was born December 13, 1997. Smith consented to be named as the child's father on the birth certificate. Sterling and Smith soon separated, and Sterling agreed in April 1998 for Smith to have custody of K.M.S.
On November 1, 1998, the day after he returned on leave from overseas duty, Gernenz learned for the first time that Sterling had a child, and he began to investigate whether he was the father. After Sterling failed to return his telephone calls, Gernenz obtained Smith's telephone number and spoke to Smith's mother. She became angry when she learned of Gernenz's claim to be K.M.S.'s father. Gernenz offered to pay for paternity testing, and Smith's mother told Gernenz to talk to Smith. Gernenz tried frequently to contact Smith, but he was unable to speak to him. Gernenz left a message on Smith's telephone answering machine. Gernenz then returned to Japan with the Air Force.[1]
On November 18, 1998, Smith filed a petition to establish paternity and be granted managing conservatorship of K.M.S. Gernenz was not named as a respondent, and the record does not show that he received any notice of this proceeding. Attached to the petition was Smith's "Statement of Paternity," an affidavit in which he stated under oath, "I acknowledge that I am the biological father of [K.M.S.], a Female child, born to Korinia Kay Sterling in Allen, Collin County, Texas, on December 13, 1997."
On February 1, 1999, while Gernenz was still in Japan with the Air Force, the trial court signed an "Agreed Order." This order states that both Smith and Sterling have "agreed to the terms of this order." The order contained a provision concerning paternity:
Paternity Established
The Court after considering the pleading, the evidence, the argument of counsel, and the circumstances of the parties and of the child, finds that the following orders are in the best interest of the child and are proper.
IT IS ORDERED that [K.M.S.], a child born to Korinia Kay Sterling at *64 McKinney, Texas on December 13, 1997, is adjudicated the child of Christopher Shane Smith and that the parent child relationship exists between the father [and] the child for all purposes.
The remainder of the order states that Smith and Sterling are joint managing conservators, with Smith having the right to establish the primary residence of the child. The order does not require either Smith or Sterling to pay child support. The order is signed by Smith and Sterling as "approved and consented to as to both form and substance," and signed by Smith's attorney as "approved as to form only." The order does not state that the child was represented by an attorney ad litem, nor does it state that the child was adequately represented by Smith or Sterling. The order does not state, and the record does not show, that Smith's claim of paternity was supported by evidence from scientific testing.
On March 19, 1999, Gernenz filed an "Original Petition to Establish Parentage." This pleading named Sterling as a respondent, but it did not name Smith as a party. Nothing in the record shows Smith received notice of this proceeding.[2] The petition alleged "[t]here are no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting the child named herein." The petition asserted that Gernenz "believes he is the biological father of" K.M.S. The petition requested that the court order Sterling, Gernenz, and K.M.S. to submit to parentage tests, and if Gernenz were determined to be the biological father, that the court enter appropriate orders for his conservatorship, support, possession, and access to the child. On May 17, 1999, the trial court entered an order stating that Sterling had not appeared or answered and had "wholly made default." The court ordered Sterling to present herself and K.M.S. to a particular health center on or before May 24, 1999, and to submit to "scientifically accepted paternity tests." Sterling did not comply with the order. The court also ordered Gernenz to ship an appropriate sample to the health center. Gernenz shipped his sample to the health center.
On July 6, 1999, Gernenz filed a motion to enforce the May 17 order against Sterling by contempt. At the hearing on the motion to enforce, Sterling testified she could not comply with the order to take K.M.S. to the health center because Smith and Smith's mother refused to allow her to take the child to the health center for the paternity tests. On August 27, 1999, the trial court denied the motion to enforce by contempt and entered a new order for Sterling to "appear" at the health center on or before September 2, 1999, for paternity testing. Sterling complied with this order.
On September 15, 1999, Gernenz filed a motion to consolidate his suit to establish parentage into Smith's paternity action (in which a final order had been entered), and Gernenz requested Smith present the child for paternity testing. Smith was served with citation for Gernenz's motion for consolidation and for paternity testing. The trial court granted the motion to consolidate on October 7, 1999, and Gernenz's and Smith's paternity actions were consolidated under the cause number for Smith's paternity action.
On September 30, 1999, Smith filed an answer to Gernenz's petition to establish *65 paternity. In his answer, Smith asserted Gernenz's suit was barred by the res judicata provision of section 160.007 of the family code because the February 1, 1999 order was a final judgment adjudicating Smith's paternity.[3] Smith also asserted he is the presumed father because he is named on the birth certificate as the father and he had been adjudicated the father.[4] Smith denied that Gernenz is the biological father, and moved the trial court to dismiss Gernenz's petition due to Gernenz's lack of standing to bring the suit.[5]
On October 4, 1999, Gernenz filed a petition for bill of review of the February 1, 1999 agreed order and a motion to vacate the order because it was obtained by fraud. This pleading named both Smith and Sterling as respondents and asserted they committed fraud by obtaining the February 1, 1999 agreed order without giving him notice. Gernenz requested that the court set aside the February 1, 1999 agreed order and order paternity testing. Both Gernenz and Smith filed briefs concerning whether the trial court should order paternity testing. On November 3, 1999, the trial court denied Gernenz's motion for parentage testing, and, on November 23, 1999, the trial court denied Gernenz's motion to vacate order obtained by fraud. Gernenz timely moved for, and the trial court entered, findings of fact and conclusions of law in support of its judgment.
Smith twice moved for sanctions against Gernenz, asserting that Gernenz's suit was groundless and without any basis in law or fact because the February 1, 1999 agreed order was a final judgment that Gernenz could not seek to overturn because he was not a party thereto. The trial court denied Smith's motions for sanctions.

BILL OF REVIEW
In his second issue, Gernenz contends the trial court erred in denying his motion to vacate/petition for bill of review[6] challenging *66 the February 1, 1999 order. Gernenz asserts Smith's failure to serve him with Smith's November 18, 1998 petition to establish paternity denied him due process.
A bill of review is an equitable action brought by a party to a former action seeking to set aside a judgment that is no longer appealable or subject to a motion for new trial. Caldwell v. Barnes, 975 S.W.2d 535, 537 (Tex.1998); Ortega v. First RepublicBank Fort Worth, N.A., 792 S.W.2d 452, 453 (Tex.1990); State v. 1985 Chevrolet Pickup Truck, 778 S.W.2d 463, 464 (Tex.1989). Upon the expiration of the trial court's plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause, filed within the time allowed by law. See Tex.R. Civ. P. 329b(f). The burden on a bill of review petitioner is heavy because the administration of justice requires that judgments be accorded some finality. See Alexander v. Hagedorn, 148 Tex. 565, 569, 226 S.W.2d 996, 998 (1950). Therefore, the grounds upon which a bill of review can be granted are narrow and restricted.
Smith argues that Gernenz's "motion to vacate" was untimely because it was filed after the trial court's plenary power expired. However, as discussed above, Gernenz's "motion to vacate" was the relief requested in his petition for bill of review, and a petition for bill of review is the procedure for attacking a judgment when the trial court's plenary power has expired. See supra note 6; Caldwell, 975 S.W.2d at 536. Smith's argument lacks merit.
Smith asserts that Gernenz lacks standing to bring a petition for bill of review because he was not a party to Smith's petition to establish paternity. Ordinarily, a petition for bill of review must be brought by a party to the earlier litigation. However, in Gunn v. Cavanaugh, the Texas Supreme Court stated that an equitable bill of review was the proper proceeding for a biological father to challenge an adoption order to which he was not a party. See Gunn v. Cavanaugh, 391 S.W.2d 723, 724 (Tex.1965). Like the father in Gunn, Gernenz seeks to set aside an order effectively terminating his alleged parental rights when he was not a party to the earlier proceeding. Accordingly, we conclude Gernenz has standing to present his petition for bill of review.
Smith also argues that the trial court lacked jurisdiction over Gernenz's petition for bill of review because Gernenz filed it as a motion in the previous suit and not as a new lawsuit. In Hughes v. Hughes, this Court held that a motion to set aside a judgment, filed under the same cause number as the earlier suit, could be treated as an independent action, and sufficed as a bill of review. See Hughes v. Hughes, 221 S.W.2d 1003, 1004-05 (Tex. Civ.App.-Dallas 1949, no writ).[7]
*67 To set aside a judgment by bill of review,
[the] petitioner must ordinarily plead and prove (1) a meritorious defense to the cause of action alleged to support the judgment, (2) that he was prevented from making by the fraud, accident or wrongful act of his opponent, (3) unmixed with any fault or negligence of his own.
Caldwell, 975 S.W.2d at 537 (quoting Transworld Fin. Serv. Corp. v. Briscoe, 722 S.W.2d 407, 408 (Tex.1987)). However, when the petitioner was not served in the earlier suit, he is not required to show any of these matters. See id.
Smith argues Gernenz's petition for bill of review fails because Gernenz failed to show fraud. Under family code section 102.009, Gernenz, as an alleged father, was entitled to service of citation in Smith's suit to establish paternity. See Tex. Fam. Code Ann. § 102.009(a)(8) (Vernon Supp. 2001). Gernenz asserts and tendered evidence that he was never served nor received notice of Smith's suit to establish paternity before the February 1, 1999 order became final. Accordingly, Gernenz is relieved of the burden of proving fraud by Smith. See Caldwell, 975 S.W.2d at 537. Smith's argument lacks merit.
Smith's failure to give Gernenz notice and obtain service of citation on Gernenz in Smith's suit to establish his paternity violated Gernenz's constitutional right to due process. See Tex. Fam.Code Ann. § 102.009(a)(8) (Vernon Supp.2001); Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 84, 108 S.Ct. 896, 99 L.Ed.2d 75 (1998) ("a judgment entered without notice or service is constitutionally infirm"), cited in Caldwell, 975 S.W.2d at 537. Smith argues Gernenz failed to raise this constitutional issue in the trial court. We disagree. Gernenz's petition for bill of review alleges, "Smith gave no notice to Alleged Father [Gernenz] even though he knew that Alleged Father was a necessary party." In his brief in support of parentage testing, Gernenz states,
Gernenz was deprived of his due process accorded by the 14th Amendment of the United States Constitution and thereby effectively terminated Gernenz' parental rights by subterfuge. Mother had unequivocally stated Gernenz' [sic] was the child's father and Smith knew this. Nevertheless, Smith never afforded Gernenz notice of the prior proceedings.
These allegations clearly put Smith on notice of Gernenz's contention that his constitutional right to due process was violated by Smith's failure to give him notice of the earlier paternity action leading to the February 1, 1999 agreed order purporting to establish Smith's paternity.
Smith also asserts Gernenz "never placed any evidence before the Court to indicate that he should have been given notice." We disagree. Gernenz testified in his bill of exception[8] that he talked to *68 Smith's mother and left a message on Smith's answering machine. Implicit in this testimony is that Gernenz told Smith's mother and Smith that he believed he was K.M.S.'s father.[9] Thus, Smith had notice that Gernenz claimed to be K.M.S.'s father. Knowing that Gernenz was an alleged father, Smith was required by family code section 102.009(a)(8) to serve Gernenz with his petition to establish paternity. See Tex. Fam.Code Ann. § 102.009(a)(8) (Vernon Supp.2001). Smith's argument that Gernenz failed to present evidence of his entitlement to service lacks merit.
Smith also asserts that Sterling's testimony did not contradict her agreeing to and signing the February 1, 1999 order. Sterling's agreeing to and signing the February 1, 1999 order is not relevant to the issue of whether Gernenz can bring a petition for bill of review challenging the order on the ground that he was not served in Smith's paternity action. Smith's argument lacks merit.

TEXAS DEPARTMENT OF PROTECTIVE & REGULATORY SERVICES v. SHERRY
The Texas Supreme Court recently issued an opinion concerning a man's attempt to establish his paternity when there had been a previous adjudication of paternity. See Texas Dep't of Protective & Regulatory Servs. v. Sherry, 46 S.W.3d 857 (Tex.2001). Sheila Welch gave birth to the child on January 7, 1992. In 1993, the attorney general filed suit to establish Charlie Cannon as the child's father, Cannon filed a statement of paternity, and the trial court adjudicated Cannon to be the father. See id. 46 S.W.3d at 860. Cannon died in January 1995. In the fall of 1995, Charles Sherry began living with Welch and the child. See id. 46 S.W.3d at 860. In 1998, Welch entered drug rehabilitation, and the Department removed the child from the home. Welch died of a drug overdose in May or June 1998, and the Department filed suit seeking to be declared sole managing conservator. Sherry filed suit seeking to be declared the child's biological father and the sole managing conservator. See id. The Department asserted Sherry's suit was barred by section 160.007(a)(1) and that he lacked standing to bring a suit affecting the parent child relationship (SAPCR). See id. 46 S.W.3d at 859-60. The trial court dismissed Sherry's suit. The court of appeals reversed, holding that Sherry had a constitutional right to assert his paternity. See id. 46 S.W.3d at 861.
The supreme court reversed the court of appeals. The supreme court held the *69 court of appeals erred in considering Sherry's constitutional arguments because he had not raised them in the trial court. See id. 46 S.W.3d at 861. The supreme court also held section 160.007(a) barred Sherry's paternity action and that he lacked standing to bring his paternity suit under then section 102.003(9) and (11).[10]See id. 46 S.W.3d at 859, 861-62. The opinion implies that Sherry was aware of the suit to establish Cannon's paternity at the time of that proceeding in 1993 because, when asked by the trial judge why he did not object to the adjudication of Cannon's paternity, Sherry responded, "`because Sheila [the child's mother] and I had an agreement on that.'" It appears from the opinion that Sherry did not bring a bill of review to have the earlier paternity adjudication set aside; instead, it appears he simply brought a new paternity action.
The supreme court's opinion does, however, contain a discussion of whether Sherry was entitled to service in the attorney general's suit in 1993 leading to the adjudication of Cannon's paternity. The court states,
Sherry claims that he did not receive notice of the 1993 paternity suit under Family Code §§ 102.009(a)(8). Section 102.009 identifies those persons entitled to be served with citation in a SAPCR and includes "an alleged father." Tex. Fam.Code §§ 102.009(a)(8). When the Attorney General filed the 1993 paternity suit, he alleged in the pleadings that Cannon was C.S.C.'s father. The Attorney General did not allege that Sherry was C.S.C.'s father. Thus, Cannon was the only "alleged father," as the term is used in the statute, who was entitled to notice. Tex. Fam.Code §§ 102.009(a)(8); see, e.g., Villery v. Solomon, 16 S.W.3d 106, 109 (Tex. App.-Houston [1st Dist.] 2000, no pet.).
Id. 46 S.W.3d at 860-61.
Although not clearly stated, it appears the supreme court's opinion defines "alleged father" under section 102.009(a)(8) to mean a man alleged in a petition in a SAPCR to be the biological father. The supreme court's reason for choosing to define "alleged father" is unclear. The opinion does not explain why the issue of Sherry's entitlement to service of process was necessary to the disposition of the appeal. It does not appear Sherry brought a bill of review or sought in any way to overturn the 1993 adjudication order. Therefore, whether Sherry was served appears entirely irrelevant to the appeal. Even if the issue of whether Sherry "receive[d] notice of the 1993 paternity suit" was relevant, id. (emphasis added), Sherry's entitlement to service of process is irrelevant because the court's opinion clearly indicates he had notice of the paternity suit because he testified he had an agreement with Welch not to protest the order adjudicating Cannon the biological father. See id. We conclude the court's *70 discussion of the meaning of "alleged father" in section 102.009(a)(8) is dicta.
Although the supreme court is not required to cite authority for its definition, it chose to do so, citing Villery v. Solomon, 16 S.W.3d 106, 109 (Tex.App.-Houston [1st Dist.] 2000, no pet.). Villery concerned a suit to establish heirship under the probate code, and the opinion does not discuss or in any way purport to define the term "alleged father" in the family code or any other statutory or common-law reference. Villery`s only references to "alleged father" are in a quotation from a DNA-test report, in which the term was used to identify the man who was the subject of the testing, and the following two sentences:
The Family Code contemplates that blood tests, for the purpose of establishing paternity, will be conducted on the mother, the alleged father, and the child. Tex. Fam.Code Ann. § 160.102 (Vernon 1996). The trial court was clearly saying that it would not make any assumptions based on the DNA report in light of the facts that no expert was presented to explain the report more fully and no DNA testing was done on the alleged father.
Villery, 16 S.W.3d at 109. The opinion does not discuss entitlement to service of process under family code section 102.009. Villery does not support the supreme court's statement that "Cannon was the only `alleged father,' as the term is used in the statute, who was entitled to notice." We are at a loss to understand why the supreme court chose to cite that case. Our research has revealed no other case purporting to define "alleged father" under section 102.009(a)(8).
Clearly, the purpose of requiring service on the laundry list of persons entitled to service under section 102.009(a) is to require the petitioner of a SAPCR to give notice to anyone who may have a legal interest in the child. See generally Tex. Fam.Code Ann. § 102.009(a) (Vernon Supp. 2001). The supreme court's restrictive definition of "alleged father" would encourage deception. For example, in situations where Man A has been raising a child and is informed by Man B that Man B is the true biological father of the child, the supreme court's definition would permit and encourage Man A to immediately file a petition to establish paternity, not serve Man B or otherwise give him any notice of the proceeding, and obtain an adjudication of paternity, possibly without scientific paternity testing. After the order becomes final, Man A can assert section 160.007(a) as a bar to any attempt by Man B to assert his paternity. Such a result is clearly not the intent of the notice provision of section 102.009(a)(8), and is contrary to the constitutional rights of Man B to establish his paternity as explained by the supreme court in In re J.W.T., 872 S.W.2d 189, 197-98 (Tex.1994).
Accordingly, we decline to follow the supreme court's apparent definition of "alleged father" as being a man alleged in a formal pleading filed in that case to be the father because: (a) it is dicta; (b) the sole authority it cites for the definition fails to support such a definition and is irrelevant to the issue; and (c) in instances where there is more than one man who believes himself to be the father of the child, it would encourage races to the courthouse to establish paternity without notice to the other men who have informed the petitioner of their claim to paternity of the child. We conclude the better construction is to interpret "alleged father" as we have done in this case, that is, to include a man who has informed the petitioner, either formally through service of process or informally by other means of communication, of his *71 belief that he is the biological father of the child.[11]
We hold the trial court erred in denying Gernenz's petition for bill of review. We resolve Gernenz's second issue in his favor.
In Gunn, the Texas Supreme Court offered advice to the parties and the trial court involving the rights of the child and the natural father:
This proceeding is not a typical bill of review but one particularly suited to the needs of the situation. A child cannot be likened to a chattel that may be stored in a warehouse for preservation and safekeeping. He is one of the most fragile and easily damaged of all living creatures. His requirements must be met with dispatch if he is to survive or escape serious damage and his needs may not be postponed pending search for a missing parent. Yet the rights of the natural parent are of high importance and due process properly requires that the burden of proof to show forfeiture of parental rights rest upon him who asserts the affirmative of the proposition and not upon the allegedly negligent parent.... Matters affecting the parent and the child and the respective rights of each should be determined so far as is consistent with orderly procedure without unnecessary involvement in procedural quirks, complications and limitations.
Gunn, 391 S.W.2d at 726-27. These words are equally applicable to this dispute concerning whether Gernenz or Smith is the biological father of K.M.S. Like the supreme court, we urge Gernenz, Smith, and the trial court to proceed without delay to apply the appropriate provisions of the family code and determine whether Gernenz or Smith is K.M.S.'s biological father. The parties have spent substantial time in "unnecessary involvement in procedural quirks, complications and limitations" to the detriment of the constitutional rights of the true biological fatherwhether he be Smith or Gernenzand the well being of K.M.S.
Having resolved Gernenz's second issue in his favor, we need not address Gernenz's remaining issues. See Tex.R.App. P. 47.1.

SANCTIONS
In his cross-appeal, Smith brings two issues asserting the trial court erred in denying his motions for sanctions and for doing so without conducting a hearing. Smith asserted in his motions for sanctions that Gernenz's pleadings were in violation of rule of civil procedure 13 because they were groundless and lacked a basis in law for the relief requested. See TEX.R. CIV. P. 13. We conclude Gernenz's pleadings were not groundless because, as explained above, he may have a basis in law for the relief he requests. Accordingly, we hold the trial court did not err in denying Smith's motions for sanctions. We resolve Smith's issues against him.
We reverse the trial court's judgment, and we remand this cause to the trial court for further proceedings.
NOTES
[1] Many of the facts to this point are taken from Gernenz's and Jackie Winkfein's testimony presented in what appears to be a bill of exception. See infra note 8. The remainder of the facts are taken from the parties' pleadings and other documents.
[2] Gernenz was required to serve Smith with citation in the suit because Smith was a managing conservator of the child. See TEX. FAM. CODE ANN. § 102.009(a)(1) (Vernon Supp.2001).
[3] Section 160.007(a)(1) of the family code provides: "[A] suit under this chapter with respect to a child is barred if final judgment has been rendered by a court of competent jurisdiction: adjudicating a named individual to be the biological father of the child...." Tex. Fam.Code Ann. § 160.007(a)(1) (Vernon 1996).
[4] In his October 22, 1999 reply to Gernenz's brief in support of his motion for parentage testing, Smith relied on family code section 151.002(a)(4), (5) for his assertion that he is the presumed father. However, these provisions were removed from the requirements for the presumption of paternity when the legislature amended the statute in 1999. See Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 138-39 (requirements for presumption of paternity before September 1, 1999), amended by Act of May 27, 1999, 75th Leg., R.S., ch. 556, § 7, 1999 Tex. Gen. Laws 3058, 3060 (requiring that a man named on a birth certificate or who filed an acknowledgment of paternity must have married or attempted to marry the mother for the presumption of paternity to arise; the amendment also removed from the definition of presumption of paternity a man who receives a child into his home and openly holds the child out as his biological child). The record does not show Smith married, or attempted to marry, Sterling. Thus, notwithstanding Smith's assertions to the contrary, the record does not show he met the requisites of the presumption of paternity after September 1, 1999.
[5] Gernenz had standing to file suit as "a man alleging himself to be the biological father of a child filing in accordance with Chapter 160." Tex. Fam.Code Ann. § 102.003(a)(8) (Vernon Supp.2001).
[6] Gernenz filed a pleading styled, "Petition for Bill of Review and Motion to Vacate Order Obtained by Fraud." After reviewing this pleading, we conclude it constitutes a single pleading: it is a petition for bill of review in which the requested relief includes the vacation of the February 1, 1999 agreed order. The parties and the trial court appear to refer to this pleading throughout this proceeding as the "motion to vacate." Accordingly, we construe the trial court's order denying Gernenz's "motion to vacate" as being a denial of the petition for bill of review, and we construe Gernenz's issues challenging the trial court's denial of his "motion to vacate" as challenges to the denial of the petition for bill of review. Neither of the parties has indicated that the trial court has not ruled on the petition for bill of review, and the docket sheet contains a notation on November 3, 1999 that Gernenz's bill of review was denied.
[7] It is not clear that Gernenz actually brought the petition for bill of review as a motion in the earlier suit. As discussed above, in March 1999, Gernenz filed a petition to establish his paternity. Then, in September 1999, he filed a motion to consolidate his paternity action with Smith's paternity action in which a final judgment existed. Smith was served with citation on the motion to consolidate, and the trial court consolidated Gernenz's paternity action with Smith's paternity action in which a final order had been entered. The parties have not briefed, and we make no holding whether the trial court can consolidate a suit, in which its plenary power has expired, with another lawsuit. What is clear is that Gernenz filed a separate suit, served Smith with citation on the motion to consolidate, and then filed his petition for bill of review. Thus, unlike the mother in Hughes, Gernenz did bring a separate suit; however, it was consolidated with Smith's paternity action.
[8] Like so much in this case, the procedural posture in which this testimony was received is unclear. Before Gernenz testified, the trial court overruled Smith's objections to his testimony. Then, after Smith had made several objections during Gernenz's testimony, the trial court told Smith not to object further because "all he's [Gernenz] doing is making an Offer of Proof. And, in fact, I could even step down if I wanted to because it doesn't matter what he has to say, as far as I'm concerned. I've made my ruling, and that's how it's going to continue. And let me hear everything you have to tell me and let's move on."
[9] Gernenz testified about his attempts to contact Smith as follows:

I called [Smith's] house and talked to his mother and-because he was at work and basically found out that the baby was there. There was a baby. When she found out who I was, she became irate and started bawling and it kind of justit made me just want to get testing done.
So, I offered to pay for the testing. We could take the baby and get testing done. She told me I could talk to her son [Smith]. And I tried to call him that night, and she basically told me he was out getting food, and so I tried back later. He then disregarded the phone and didn't answer it for about 30 minutesactually, I know for about 30 minutes, and that's how I know, because that's how long I tried to call.
I tried back the next day and still could not get ahold of him and tried back the next evening and tried every so often. And the answering machine came on, and I said who I was and what I was calling about, and I had to leave and I was going to have to call Child Protective Services, and that's when I went back to Japan.
[10] The supreme court's opinion does not discuss Sherry's standing under section 102.003(8), which gave standing to "a man alleging himself to be the biological father of a child filing in accordance with chapter 160." See Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 125, amended by Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 8, 1995 Tex. Gen. Laws 3888, 3890, and amended by Act of May 30, 1999, 76th Leg., R.S., ch. 1390, § 2, 1999 Tex. Gen. Laws 4696, 4696 (current version codified at Tex. Fam.Code Ann. § 102.003(a)(8) (Vernon Supp.2001)). This provision was in effect when Sherry filed his petition to establish paternity in 1998 and would appear to give him standing; however, the supreme court does not explain why this provision does not apply.
[11] Our interpretation of "alleged father" is consistent with the legislative intent to allow a man to allege himself to be the father of a child. See Tex. Fam.Code Ann. § 160.101(a)(4) (Vernon Supp.2001); see also id. § 160.007(b).