NO. 12-09-00345-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE BEST INTEREST* | § | *APPEAL FROM THE 294TH* |
| *OF J.N.B.,* | § | *JUDICIAL DISTRICT COURT* |
| *A CHILD* | § | *VAN ZANDT COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

B.R. appeals from the trial court's summary judgment orders entered in this suit affecting the parent-child relationship and the trial court's dismissal of his suit to adjudicate parentage. In five issues, he contends the trial court did not have jurisdiction, denied him certain constitutional rights, erred in applying the statute of limitations, and erred by not adjudicating him the father. We affirm.

### BACKGROUND

G.N.M. gave birth to J.N.B. on December 30, 2003. She was not married at the time. However, she had been living with her boyfriend, J.R.B., and he was with her when J.N.B. was born, as were his parents, C.B. and R.B. On January 2, 2004, G.N.M. and J.R.B. signed an acknowledgment of paternity declaring that J.R.B. is the biological father of J.N.B. The acknowledgment was filed in the Texas Bureau of Vital Statistics on February 20, 2004.

On April 30, 2008, in Van Zandt County, C.B. and R.B. filed their petition in a suit affecting the parent-child relationship alleging that they are the paternal grandparents and seeking to be named sole managing conservators of J.N.B. After a hearing held July 9, 2008, the trial court signed an order appointing them sole managing conservators and appointing J.R.B. and G.N.M. possessory conservators. The court also entered a permanent injunction against G.N.M., enjoining her from causing physical contact with or bodily injury to them, and from threatening them or interfering with their possession of the child. Because G.N.M. was in

possession of the child, the court signed an order for issuance of a writ of habeas corpus directing her to produce the child on July 31, 2008. At the hearing held that day, G.N.M. told the court that B.R., whom she described as J.N.B.'s biological father, had taken possession of J.N.B.

Also on July 31, 2008, B.R. filed, in Collin County, a petition to adjudicate parentage, supported by his affidavit of acknowledgment of paternity, asking for an order adjudicating parentage and to be appointed sole managing conservator. The following day he filed an application for a protective order against C.B., R.B., and J.R.B. on the basis that he is the biological father of J.N.B. On July 31, in Van Zandt County, C.B. and R.B. filed a petition for writ of habeas corpus in an attempt to get the child from B.R. A hearing was held in Van Zandt County district court on August 4, 2008. B.R. was in attendance. He and several others testified on his behalf. At the end of the hearing, the court ordered him to bring the child to the courthouse. Once J.N.B. was at the courthouse, the court ordered B.R. to give her to C.B. and R.B.

On September 2, 2008, B.R. filed a motion to transfer his Collin County case to Van Zandt County, which was granted. The two cases were then consolidated in the Van Zandt County district court. In his amended petition to adjudicate parentage, B.R. stated that the purpose of his suit was to establish his paternity, establish a parent-child relationship with J.N.B., and establish that C.B. and R.B. have no standing to possess the child and do not have capacity to sue for conservatorship. He asked the court to order G.N.M. to pay child support. G.N.M. did not answer the lawsuit, and the trial court granted B.R. a default judgment as to her.

After consolidation of the two suits, B.R. filed a motion for summary judgment challenging the trial court's jurisdiction over "this lawsuit." He argued that C.B. and R.B. lack standing due to the fact that their son is not the father of the child. He accused them of taking the child and hiding her from B.R., depriving the natural father of lawful custody of his child. He asked the court to dismiss C.B. and R.B. from the suit, name him sole managing conservator of the child, and order the child handed over to him immediately. The motion was supported by B.R.'s affidavit, a copy of the results of two private DNA tests indicating that B.R. is the father, B.R.'s affidavit of acknowledgment of paternity, C.B.'s August 4, 2008 testimony, and a copy of a report containing the results of a DNA test indicating that J.R.B. is not the father.

C.B. and R.B. filed a response contending that B.R.'s suit is barred by limitations pursuant to Texas Family Code Section 160.609(b), B.R. failed to comply with any of the family

2

code's methods for establishing that he is the father, and he lacks standing to challenge J.R.B.'s paternity or C.B. and R.B.'s appointment as sole managing conservators. Additionally, they asserted that C.B. and R.B. have standing, and they objected to the two paternity test reports purportedly showing that B.R. is the child's father, as well as B.R.'s affidavit of acknowledgment of paternity. They attached to the motion the 2004 acknowledgment of paternity signed by J.R.B. and G.N.M.

Thereafter, C.B. and R.B. filed a motion for summary judgment asserting that B.R.'s suit in which he sought an adjudication of paternity is barred by limitations because the child has an adjudicated father and B.R.'s suit was not filed within the statutory four year time period. B.R. filed a response arguing that limitations was tolled by evidence that the acknowledgment was false, J.R.B. is not the child's father, B.R. is her real father, and the child had been in B.R.'s possession for most of her life. B.R. later filed a second motion for summary judgment claiming that his due process rights have been violated. The trial court granted C.B. and R.B.'s motion for summary judgment and dismissed B.R.'s amended petition to adjudicate parentage. The court denied B.R.'s motion that raised the issue of standing. B.R.'s motion concerning his constitutional rights was never heard or ruled on by the trial court. B.R. filed a motion for new trial complaining that the trial court erred in granting C.B. and R.B.'s motion for summary judgment, his constitutional rights were violated, and the trial court lacked jurisdiction. The trial court denied the motion for new trial.

## JURISDICTION

In his fourth issue, B.R. contends that C.B. and R.B. are "strangers to the child in law and as a rule of law have no standing to bring suit in relation to the child." He argues that he is the biological father, not J.R.B., and that C.B. and R.B. did not have possession of the child long enough to gain standing. He therefore asserts that the trial court lacked subject matter jurisdiction. He further contends that he was a necessary party to their suit and the July 9, 2008 order is void because he was not served and the trial court lacked jurisdiction over him. Accordingly, he contends, it was error for the trial court to deny his motion for summary judgment, which was based on standing. Because his argument in the motion is based on jurisdiction, we treat the motion as a plea to the jurisdiction.

**Standing**

Subject matter jurisdiction is essential to the authority of a court to decide a case and standing is a component of subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443-45 (Tex. 1993). The question of who has standing to bring an original suit affecting the parent-child relationship seeking managing conservatorship is a threshold issue. *In re SSJ-J*, 153 S.W.3d 132, 134 (Tex. App.–San Antonio 2004, no pet.). An original suit affecting the parent-child relationship may be filed by a person other than a foster parent who has actual care, control, and possession of the child for at least six months ending not more than ninety days preceding the date of the filing of the petition. TEX. FAM. CODE ANN. § 102.003(a)(9) (Vernon 2008). The pleader is required to allege facts in his petition affirmatively demonstrating the trial court's jurisdiction to hear the case. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. Respondents may raise the absence of subject matter jurisdiction by filing a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). A plea to the jurisdiction may challenge the sufficiency with which the pleadings allege facts affirmatively demonstrating jurisdiction or the existence of the jurisdictional facts alleged by the plaintiff. *Id*. at 226-27. A plea questioning the trial court's jurisdiction raises a question of law that we review de novo. *Id*. at 226. In reviewing a challenge to jurisdictional facts, we review the pleadings and any evidence relevant to the jurisdictional issue. *Id*. at 226-27.

C.B. and R.B. alleged in their original petition that they are the paternal grandparents and have standing because J.N.B. had resided with them for more than six months before they filed their petition. At the July 9, 2008 hearing, C.B. testified that J.N.B. had lived with them for the majority of her life and, at the time they filed suit, she had lived with them continually for six months. J.R.B. testified that he is the father of J.N.B. Although at that point there was no challenge to C.B. and R.B.'s standing, they met the standing requirement by pleading and proving that they had possession of the child for more than six months before they filed their petition. TEX. FAM. CODE ANN. § 102.003(a)(9); *Miranda*, 133 S.W.3d at 226-27. The order appointing them managing conservators was signed the same day. It was a final, appealable order, but it has never been appealed. B.R.'s later submitted evidence that he had possession of J.N.B. for most of her life was conflicting. Further, he never established that he had possession of her for at least six months, ending not more than ninety days before April 30, 2008, which

4

would establish that C.B. and R.B. did not meet the statutory possession requirement. *See* TEX. FAM. CODE ANN. § 102.003(a)(9). Thus, his evidence did not show that C.B. and R.B. did not have standing.

**B.R. as Necessary Party**

B.R. asserts that, because he is the child's father, he should have been served notice of C.B. and R.B.'s suit affecting the parent-child relationship. *See* TEX. FAM. CODE ANN. § 102.009(7) (Vernon Supp. 2010). The family code provides for establishment of the father-child relationship. *See* TEX. FAM. CODE ANN. § 160.201(b) (Vernon 2008). A man may establish a father-child relationship only by (1) an unrebutted presumption of paternity under family code Section 160.204, (2) an acknowledgment filed with the bureau of vital statistics, (3) an adjudication in a civil proceeding, or (4) adoption. *Id*. B.R. was never married to G.N.M. and did not continuously reside in the household in which the child resided during the first two years of her life. There has been no adjudication of his paternity, and he has not adopted J.N.B. He presented a document entitled "Acknowledgment of Paternity," but it does not meet the requirements of the family code. *See* TEX. FAM. CODE ANN. § 160.302 (Vernon 2008). The record contains documents purporting to be the results of two private paternity tests showing a 99.99% probability that B.R. is the father, as well as testimony about those test results. However, the tests were not in compliance with Subchapter F of family code Chapter 160. *See* TEX. FAM. CODE ANN. §§ 160.501-.505 (Vernon 2008). Thus, B.R. has never established the father-child relationship between him and J.N.B. *See* TEX. FAM. CODE ANN. § 160.201(b).

A valid acknowledgment of paternity is the equivalent of an adjudication of the paternity of a child and is sufficient to establish the father-child relationship. TEX. FAM. CODE ANN. §§ 160.201(b)(2), 160.305(a) (Vernon 2008). Thus, it was established that J.R.B. was legally J.N.B.'s father. J.R.B. was properly named in the petition as the father.

To the extent B.R. may be asserting that he should have been served because he is an alleged father, we also decide that argument against him. C.B. and R.B. both testified that they did not know B.R. and he had not called them. C.B. specifically said she does not know who the biological father is. Although G.N.M. testified that she let C.B. and R.B. "know" about B.R.'s DNA test results, even if believed, she never said that she identified B.R. There is also no evidence that J.N.B. identified B.R. to C.B. and R.B. Because the record does not show that R.B. and C.B. knew B.R.'s identity at the time they filed their suit, they were not required to

serve him notice. The fact that B.R. was not named in the petition and not served with notice of the petition in C.B. and R.B.'s suit affecting the parent-child relationship does not render the July 9, 2008 order void. Because C.B. and R.B. alleged facts sufficient to affirmatively demonstrate the trial court's jurisdiction to hear their case, the trial court did not err in denying B.R.'s jurisdictional plea. *See* TEX. FAM. CODE ANN. § 102.003(a)(9); ***Tex. Ass'n of Bus.***, 852 S.W.2d at 446. We overrule the portions of B.R.'s fourth issue concerning standing and whether B.R. was a necessary party to the suit filed by C.B. and R.B.

### LIMITATIONS

Also in his fourth issue, B.R. claims that his actions are a direct attack and not a collateral attack on the judgment. He explains that the family code restricts collateral attacks on acknowledgments to four years from the date they are filed, but the code is silent as to direct attacks on acknowledgments. He then argues that his actions are not a collateral attack but, rather, they are a direct attack on the July 9, 2008 order. He then argues that an acknowledgment is equivalent to an adjudication of paternity and the adjudication is a default judgment because no one answered or showed up for a hearing. These arguments ignore both the summary judgment proceedings in the trial court and the applicable statute of limitations in the family code.

## Summary Judgment

We review the trial court's decision to grant a summary judgment de novo. ***Tex. Mun. Power Agency v. Pub. Util. Comm'n***, 253 S.W.3d 184, 192 (Tex. 2007). The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); ***Nixon v. Mr. Prop. Mgmt. Co.***, 690 S.W.2d 546, 548 (Tex. 1985). To prevail on a summary judgment, a defendant as movant, must either (1) disprove at least one element of each of the plaintiff's theories of recovery or (2) plead and conclusively establish each essential element of an affirmative defense. ***City of Houston v. Clear Creek Basin Auth.***, 589 S.W.2d 671, 678 (Tex. 1979). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. *Id.* at 678-79.

6

An appellate court reviewing a summary judgment must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007). When both parties move for summary judgment, each party must carry its own burden as movant, and this court considers all evidence accompanying both motions in determining whether the trial court properly granted either party's motion. *Dae Won Choe v. Chancellor, Inc.*, 823 S.W.2d 740, 742 (Tex. App.–Dallas 1992, no writ).

## Four Year Limitations Period

The family code specifically provides that a civil proceeding may be maintained to adjudicate the parentage of a child. TEX. FAM. CODE ANN. § 160.601 (Vernon Supp. 2010). There is no time limitation for bringing a proceeding to adjudicate the parentage of a child having no presumed, acknowledged, or adjudicated father. TEX. FAM. CODE ANN. § 160.606 (Vernon 2008).

A valid acknowledgment of paternity filed with the bureau of vital statistics is the equivalent of an adjudication of the paternity of a child and confers on the acknowledged father all rights and duties of a parent. TEX. FAM. CODE ANN. § 160.305(a). Thus, the statute specifies the effect of an acknowledgment. The acknowledgment has the binding effect of a final judgment rendered at the conclusion of an adversarial hearing. *See In re M.W.T.*, 12 S.W.3d 598, 601-02 (Tex. App. – San Antonio 2000, pet. denied). J.R.B. was effectively adjudicated as the father of J.N.B. as of February 20, 2004. No signatory to the acknowledgment has ever challenged it.

If a child has an acknowledged father, as in this case, an individual, other than the child, who is not a signatory to the acknowledgment and who seeks an adjudication of paternity of the child must commence a proceeding not later than the fourth anniversary of the effective date of the acknowledgment. TEX. FAM. CODE ANN. § 160.609(b) (Vernon 2008). Further, with one exception not applicable here, a collateral attack on an acknowledgment may not be maintained after the fourth anniversary of the date the acknowledgment is filed with the bureau of vital statistics. TEX. FAM. CODE ANN. § 160.308(c) (Vernon 2008). B.R. did not commence his suit by February 20, 2008. Therefore, C.B. and R.B. met their burden to show that B.R. is barred by limitations from seeking an adjudication of paternity of J.N.B. *See City of Houston*, 589 S.W.2d at 678.

7

B.R. also argues that the default judgment rendered in his favor against G.N.M. "adjudicated him as a father of the child" and "set aside" the July 9, 2008 order in favor of C.B. and R.B. He argues this was not an impermissible collateral attack on the judgment. In his petition, B.R. asked for child support from G.N.M. No order for child support was ever rendered against G.N.M. Apparently, the default judgment had no effect whatsoever. The default judgment entered in B.R.'s favor against the mother of the child did not adjudicate him as the child's father and did nothing to alter or affect the July 9, 2008 order appointing C.B. and R.B. managing conservators. We overrule the portion of B.R.'s fourth issue arguing that his actions are a direct attack on the July 9, 2008 order and the acknowledgment.

## Applicability of Limitations Period

In his third issue, B.R. asserts that the limitations statute should not be applied in this case. He argues that the purpose of a limitations statute is to suppress fraudulent and stale claims and since his claim is neither fraudulent nor stale, and there is no evidence of prejudice to C.B. and R.B., application of the statute of limitations is not equitable. He also argues that the family code's four year statute of limitations should not be applied in this case because the rights of the natural parent are paramount and the statute of limitations exists to protect the family unit, while application of the statute here would destroy the family unit.

There is a well-established policy goal of finality in matters concerning the parentage of minor children. *In re Attorney Gen.*, 195 S.W.3d 264, 268 n.6 (Tex. App.–San Antonio 2006, orig. proceeding). The family code is definite on the term for the statute of limitations and provides no exception for an alleged father's purported equitable interest. *See* TEX. FAM. CODE ANN. § 160.609(b). B.R. did not raise a fact issue regarding the applicability of the statute of limitations. *See City of Houston*, 589 S.W.2d at 678. We overrule B.R.'s third issue.

## Tolling of Limitations Period

In his second issue, B.R. contends that the trial court erred in granting C.B. and R.B.'s motion for summary judgment because he raised a fact issue as to the tolling of the four year statute of limitations. He argues that the acknowledgment of paternity was false and the paternity test taken by J.R.B. in 2005 showed that he was not the father. Further, he argues, during the four year period, he possessed the child and took two paternity tests that showed that he is the father. He asserts this evidence created a fact issue as to whether the limitations period

8

was tolled or estops C.B. and R.B. from denying that the paternity test they presented started the limitations period afresh, thus making the filing of his petition timely.

The party seeking to avoid limitations bears the burden of proving a provision that would toll the statute of limitations. *See In re J.H.*, 264 S.W.3d 919, 923 (Tex. App.–Dallas 2008, no pet.). B.R. relies on the case of *In re C.S.*, 277 S.W.3d 82 (Tex. App.–Amarillo 2009, orig. proceeding). That case applies family code Section 160.308, which dictates the procedure and time period applicable to a challenge to an acknowledgment by a signatory to the acknowledgment. *See id*. at 85-86. *In re C.S.* is not applicable here. Moreover, while Section 160.308(a) does provide that a signatory of an acknowledgment of paternity may challenge the acknowledgment on the basis of fraud, duress, or material mistake of fact, the proceeding must be commenced within four years of the date the acknowledgment is filed with the bureau of vital statistics. TEX. FAM. CODE ANN. § 160.308(a) (Vernon 2008). The allegation of fraud, duress, or material mistake of fact does not toll the limitations period. *See id*. B.R. did not raise a fact issue regarding the tolling of the limitations period. The trial court did not err in granting C.B. and R.B.'s motion for summary judgment based on limitations. *See* TEX. R. CIV. P. 166a(c). We overrule B.R.'s second issue.


### CONSTITUTIONAL RIGHTS

In his first issue, B.R. asserts that the trial court's order granting summary judgment in favor of C.B. and R.B. violates his fundamental right to raise his child as he sees fit and his rights to due course of law and to open courts under the Texas Constitution and his right to due process under the federal constitution.[1] He argues that a literal interpretation of family code Section 160.609(b), the statutory provision that limits the time period for bringing suit to adjudicate parentage to four years, works a manifest injustice and shocks the conscience. Alluding to the fact that there is no limitations period for bringing a suit to adjudicate parentage of a child having no presumed, acknowledged, or adjudicated father, B.R. contends that his rights were stripped because someone who is not the child's biological father filed an acknowledgment.

---

[1] We were unable to verify from the record that B.R. raised his open courts argument in the trial court. We will, however, address the argument in the interest of justice.

9

We agree that the natural right which exists between parents and their children is one of constitutional dimensions. *In re J.W.T.*, 872 S.W.2d 189, 194-95 (Tex. 1994). However, the rights of natural parents are not absolute; protection of the child is paramount. *Id*. at 195. Furthermore, an unwed father does not automatically have full constitutional paternal rights by virtue of a mere biological relationship. *Id*. at 198. Even status as a "parent" under the family code does not guarantee a relationship with the child. *Id*. at 198 n.25. With this caveat, we turn to B.R.'s specific constitutional complaints.

## Open Courts

The open courts provision of the Texas Constitution protects citizens from legislative acts that allegedly deny them access to the courts. *See* TEX. CONST. art. I, § 13. In analyzing a litigant's right to redress, two criteria must be satisfied. "First, it must be shown that the litigant has a cognizable common law cause of action that is being restricted. Second, the litigant must show that the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute." *Sax v. Votteler*, 648 S.W.2d 661, 666 (Tex. 1983).

Paternity suits were not permitted in Texas at common law. *In re J.W.T.*, 872 S.W.2d at 191. Therefore, B.R. cannot meet the first requirement of *Sax*. *See Sax*, 648 S.W.2d at 666. Furthermore, the open courts provision does not confer an open-ended and perpetual right to sue; it merely gives litigants a reasonable time to discover their injuries and file suit. *Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin*, 307 S.W.3d 283, 284 (Tex. 2010). In his response to C.B. and R.B.'s motion for summary judgment, B.R. said he had "full knowledge of his status as the natural father" of J.N.B. since she was eighteen months old. At no time during the approximately two and one-half years remaining before the end of the limitations period did B.R. attempt to pursue his right to sue. Therefore, assuming B.R. is J.N.B.'s biological father, he has not shown a violation of Article I, Section 13 of the Texas Constitution.

## Due Process

Due process of law is required by both the federal and Texas constitutions. U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19. Due process, at a minimum, requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333-34, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976). The process due is measured by a flexible standard depending on the practical requirements of the circumstances. *Id*. at 334, 96 S. Ct. at 902.

10

The establishment of paternity is a matter of legislative policy. *See **Michael H. v. Gerald D.***, 491 U.S. 110, 129-30, 109 S. Ct. 2333, 2345, 105 L. Ed. 2d 91 (1989). The Texas Legislature, in passing Section 160.609(b), determined the policy in this state is to generally limit challenges to legally established paternity to four years after the acknowledgment is filed. *See* TEX. FAM. CODE ANN. § 160.609(b). To determine the extent of procedural rights to which a biological father is entitled, we must consider the public interest in protecting the child along with the father's constitutional interest in establishing a relationship with his child. ***In re J.W.T.***, 872 S.W.2d at 195. One who is arbitrarily prevented from attempting to establish any relationship with his natural child, after making early and unqualified acceptance of parental duties, is denied due course of law under Article I, Section 19 of the Texas Constitution. ***Id.*** at 198.

**Facts**

At the habeas corpus hearing, R.B. testified that he, his son, and his wife had been at the hospital when J.N.B. was born and they have had possession of her for a significant period of time since she was born. They often had her for three or four months at a time, although sometimes G.N.M. would take her and not bring her back right away. He had never met or talked to B.R., and he was not aware that G.N.M. was pregnant when she moved in with his son. He denied ever receiving any calls from B.R. and testified that B.R. never provided any support for J.N.B. Additionally, he said J.N.B. is covered by his health insurance.

B.R. testified that he and G.N.M. ended their relationship when she was six months pregnant. From "the day she conceived and found out she was pregnant," he suspected that he was J.N.B's father. He voluntarily took a DNA test in August 2005 that indicates he is the father. He admitted, however, that he had never been to court or been awarded custody or conservatorship of J.N.B. He testified that J.N.B. had lived with him since she was about eighteen months old. At some point, she and G.N.M. had lived with him for a month and a half and then they lived with another man, the father of G.N.M.'s son. He testified that in 2005 or the beginning of 2006, he "visited with [J.N.B.] for three, four weeks. [He] got to know her back and forth. And one day [G.N.M.] said she couldn't take care of her and she dropped her off with [him] for three months." He explained that he let J.N.B. visit with her mother, sometimes for one or two days, sometimes for three or four weeks. He testified that he did not allow J.N.B. to

11

visit C.B. or R.B., and he "clearly stated in the beginning of it that [G.N.M.] needed to break ties" with C.B. and R.B. because he felt they were trying to take his daughter.

In contrast to his earlier testimony, B.R. also stated that, prior to December 30, 2007, the longest amount of time J.N.B. was out of his possession was two weeks. Then, he explained, apparently referring to the time period after December 30, 2007, G.N.M. picked up J.N.B. and would not return her. He did not know where J.N.B. was until March 2008. He said he called C.B. and R.B.'s residence and they hung up on him. He believed they knew about him because he thought J.N.B. told them. He claimed to be the primary caregiver and testified about one time that he gave G.N.M. money for child support. He was unable to name her doctor or dentist and admitted that he had never taken her for immunizations.

Courtney Ramos, B.R.'s sister-in-law, testified that J.N.B. would be gone and then come back, sometimes for a month, sometimes for six months. Janice Herrara, B.R.'s fiancé, explained that J.N.B. would stay with them for long periods of time, but she would also stay with her mother and other relatives.

C.B. testified that she does not know B.R. and he has never called her house. J.N.B. has mentioned him, but she did not know he had taken a DNA test. She admitted that they learned through DNA testing in September 2005 that her son is not the biological father. She testified that J.N.B. has spent all her life with her and R.B. except that G.N.M. has taken her for a couple of months at a time.

G.N.M.'s deposition testimony is included as an exhibit to B.R.'s response to C.B. and R.B.'s motion for summary judgment. In her deposition, G.N.M. testified that, between mid-2005 and December 30, 2007, J.N.B. spent forty percent of her time with B.R., forty percent of her time with C.B. and R.B., and twenty percent with her. She explained that J.R.B. did not know about B.R. before the pregnancy, but he knew sometime after J.N.B. was born. However, she testified that B.R. "knew about everything." She had not told J.R.B. that he might not be the father. She testified that before B.R. took the DNA test, she did not believe he was the father because B.R. had told her he could not father a child. She assumed J.R.B. was the father. Before B.R.'s DNA test, her mom called to let J.R.B. know he might not be the father. G.N.M. testified that once she found out the results of B.R.'s August 2005 DNA test, she let C.B. and R.B. "know," and they did their own test to see if J.R.B. was the father.

**Discussion**

This record does not show a due course or due process violation. B.R. had a relationship with, and was living with, the child's mother at the time she got pregnant. He suspected that he was the father. His relationship with the mother ended three months before the child's birth. He was not present for the birth, and G.N.M. explained that he saw the child only twice in the first eighteen months of her life, the first time by accident, and the second time for the DNA test. During that time, J.R.B. believed he was the biological father and raised the child as his own. Each individual's status as a parent must be evaluated on its own. A determination, or even acquiescence, that J.R.B., the acknowledged father, is not the biological father does not inure legal benefits to B.R., even if he is the biological father. *See In re S.C.L.*, 175 S.W.3d 555, 559 (Tex. App.–Dallas 2005, no pet.) (holding that nothing in Texas law suggests that the termination of a presumed father's parental rights somehow inures legal benefits to a biological father).

About mid-2005, when J.R.B. and G.N.M. broke up, B.R. began to see J.N.B. There is conflicting testimony regarding how much time he actually spent with her and how much care and financial support he actually provided. Even after DNA test results indicated in 2005 that B.R. is the biological father, he made no effort to legally claim J.N.B. as his daughter. There is nothing in the record indicating that before July 31, 2008, the date he filed his petition, he was prevented from attempting to assert his parental rights by anyone or anything beyond his control. A delay by the biological father in asserting parental rights long after the child has established a relationship with her acknowledged father is a factor the court should consider in balancing the parties' interests. *See In re J.W.T.*, 872 S.W.2d at 195 n.18. We conclude, under the facts of this case, that the statutory four year window for filing a lawsuit to adjudicate parentage provided B.R. adequate due process and due course protections in compliance with the federal and state constitutions. *See id*. at 198.

B.R. also complains that he was not served with citation in C.B. and R.B.'s suit affecting the parent child relationship, contending that he was "denied his rights to due course of law and due process by never being served nor included in the suit" they filed. Apparently, his argument is based on family code Section 102.009(a)(8), which provides that an alleged father is entitled to service of citation on the filing of a petition in a suit affecting the parent-child relationship. *See* TEX. FAM. CODE ANN. § 102.009(a)(8) (Vernon Supp. 2010). He relies heavily on the case of *In re K.M.S.*, 68 S.W.3d 61 (Tex. App.–Dallas 2001, pet. denied). There, Smith, the man named as

13

the father on the child's birth certificate, filed suit to establish his paternity. The court determined that Smith's failure to give the alleged father, Gernenz, notice and obtain service of citation on him violated Gernenz's constitutional right to due process. *Id*. at 67-68. The court based its holding on the fact that the record showed unequivocally that the presumed father knew Gernenz was an alleged father. *Id*. The court specifically explained, "Knowing that Gernenz was an alleged father, Smith was required by family code section 102.009(a)(8) to serve Gernenz with his petition to establish paternity." *Id*. at 68.

In contrast, the record before us indicates that C.B. and R.B. did not necessarily know the identity of B.R. Certainly, they knew by September 2005 that their son was not J.N.B.'s biological father and, therefore, an alleged father existed. However, they both testified that they do not know B.R. and he had not called them. C.B. said that J.N.B. had mentioned him but not often. C.B. testified that she did not know that B.R. had taken a DNA test. She specifically said that she does not know who the biological father is. G.N.M. testified that J.R.B. did not know of B.R. until after the child was born, and she did not tell C.B. and R.B. that she let J.N.B. see B.R. While G.N.M. said that, after she learned of the results of B.R.'s DNA test results, she let C.B. and R.B. "know," she never explained what she told them. While J.N.B., who was just four at the time suit was filed, may have mentioned B.R., there is no testimony that she identified him. There is no evidence that anyone told C.B. and R.B. the identity of the alleged father before April 30, 2008, when they filed suit. The absence of proof in the record does not establish error on the face of the record. *See **Ginn v. Forrester***, 282 S.W.3d 430, 433 (Tex. 2009). C.B. and R.B. cannot be charged with the requirement of serving an individual if they do not know who that individual is. Thus, B.R.'s rights to due process and due course of law were not violated by C.B. and R.B's failure to serve him with citation in their suit affecting the parent-child relationship. We overrule B.R.'s first issue.

**MOTION FOR NEW TRIAL**

In his fifth issue, B.R. contends that his Collin County petition to adjudicate parentage was filed before the July 8, 2008 order appointing C.B. and R.B. managing conservators became final. Therefore, once consolidated, his argument continues, his Collin County petition was effectively a motion for new trial filed in C.B. and R.B.'s suit affecting the parent-child

14

relationship. Further, he asserts, the trial court erred in failing to order an official paternity test and formally adjudicate him as the father of the child.

The rules of civil procedure provide that the time for filing a motion for new trial is prior to or within thirty days after the order complained of is signed. TEX. R. CIV. P. 329b. Assuming there is any authority for considering the Collin County petition to be a motion for new trial, the order of consolidation was not signed until November 25, 2008. We would also have to assume that the consolidation order could have a retroactive effect. B.R. has provided no authority that this could occur, and we have found none. Moreover, the result would be the same. B.R.'s arguments in his petition, even if we consider it a motion for new trial, are barred by limitations as explained above. We overrule B.R.'s fifth issue.

## DISPOSITION

Because B.R. has raised no trial court error, we ***affirm*** the trial court's judgment in favor of C.B. and R.B., the trial court's denial of B.R.'s motion for summary judgment, and the trial court's dismissal of B.R.'s suit to adjudicate parentage.

**SAM GRIFFITH**
Justice

Opinion delivered June 30, 2011.
*Panel consisted of Worthen, C.J., Griffith, and Hoyle, J.*

(PUBLISH)

15