Kenneth Loyd ROGERS et ux., Relators,

v.

Hon. Robert L. LOWRY, Judge, Juvenile Court, Harris County, Texas, Respondent.

No. 16843.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 20, 1977.

R. E. McDaniel, Winnie, for relators.

Joe G. Resweber, County Atty., Billy E. Lee, Theodore H. Wu, Jr., Asst. County Atty., Houston, for respondent.

EVANS, Justice.

Relators in this mandamus proceeding seek to compel the Honorable Robert L. Lowry, Judge of the Juvenile Court, Harris County to proceed to trial in adoption proceedings instituted by relators.

Relator Janie Rogers is the natural mother of two minor children born out of wedlock in 1970 and 1972 and having different biological fathers. Relator Kenneth Loyd Rogers is the step-father of the two children, having married the children's mother in 1974. On September 9, 1976, Relators filed the subject proceedings for the adoption of the two children. The adoption petition indicates that the Relator Janie Rogers is the natural mother of the children and that Relator Kenneth Loyd Rogers is the children's step-father, but the petition does not reflect the names or addresses of the biological fathers. In Relators' letter to the clerk of the trial court, transmitting the petition for filing, it is stated that no service is needed in the case "as parental rights are not sought to be terminated."

It is the Relators' position that the children's biological fathers are not "parents" within the meaning of the Texas Family Code and therefore are not entitled to notice and opportunity to be heard with respect to the adoption proceedings.

A child, as defined in the Texas Family Code, is a person under 18 years of age, who is not and has not been married and who has not had his disabilities of minority removed for general purposes. Section 11.-01(1). A parent is defined as the child's mother, a man as to whom the child is legitimate, or an adoptive mother or father, unless the parent-child relationship has been terminated. Section 11.01(3). An illegitimate child is one who is not and has never been the legitimate child of a man and whose parent-child relationship with its natural mother has not been terminated by court decree. Section 11.01(8). The Code also specifies the rights, privileges, duties and powers of a parent under the parent-child relationship. Section 11.01; Section 12.04.

Relators argue that because of the children's illegitimate status, no statutory parent-child relationship ever existed between the children and their biological fathers and that it would be legally impossible to terminate a relationship which never existed. On this basis they contend that it would be meaningless to accord to the biological fathers of illegitimate children any right of notice or opportunity to be heard with respect to the adoption proceeding. Relators contend that the biological fathers of illegitimate children have no rights to terminate, and to require that they be given notice and an opportunity to be heard would be wasteful in time and money.

The contentions advanced by Relators run contrary to constitutional concepts of due process. The biological father of an illegitimate child has a "cognizable and substantial interest" in the custody of his illegitimate children, and the denial of his right to notice and an opportunity to be heard with respect to such custody violates his constitutional right to due process. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

In *Stanley,* as here, it was contended that an unwed father was not a "parent" whose existing relationship with his children must be considered in a dependency proceeding instituted by the state. The Illinois statute defined a parent as the father and mother of a legitimate child, or the survivor of them, or the natural mother of an illegitimate child, including an adoptive parent. The United States Supreme Court held that the unwed father was entitled to a hearing on his claim of parental qualification for custody of the children before the state

could remove them from his custody. In its opinion that Court stated:

". . . 'To say that the test of equal protection should be the "legal" rather than the biological relationship is to avoid the issue. For the Equal Protection Clause necessarily limits the authority of a State to draw such "legal" lines as it chooses.' *Glona v. American Guarantee & Liability Ins. Co.,* 391 U.S. 73, 75–76, 88 S.Ct. 1515, 1516, 20 L.Ed.2d 441 (1968)." 92 S.Ct. 1213.

The Court also commented on the state's argument that unmarried fathers were so seldom fit that the state should not be required to undergo the administrative inconvenience of serving notice. After stating the argument, the Court declared:

". . . The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones." 92 S.Ct. 1215.

Both Relators and Respondent make reference to the recent decision of the Texas Supreme Court, *In the Interest of K,* 535 S.W.2d 168 (Tex.1976). In that case proceedings were instituted by the Child Welfare Unit to terminate the parent-child relationship between the child and its mother. The biological father was served with citation. The biological father then filed a petition for the voluntary legitimation of the child and sought to be appointed the child's managing conservator. The trial court denied the father's petition, determining that he was not a fit person to act as the child's parent and granted the Child Welfare Unit's petition. The majority of the Texas Supreme Court held that under the circumstances of the case the trial court could properly have denied the father's petition based upon a determination of the child's best interest and that it was not required to base its determination upon one or more of the specific grounds for termination set forth under Section 15.02 of the Texas Family Code. The majority opinion did, however, recognize the father's constitutional right of due process as set forth in *Stanley v. Illinois,* supra, indicating in its opinion that the biological father had been given notice and an opportunity to be heard. 535 S.W.2d 171.

The legislature has specifically designated the persons who are entitled to service of citation upon the filing of a petition in a suit affecting the parent-child relationship. Texas Family Code, Section 11.09. The Code does not specifically provide that the biological father of an illegitimate child is entitled to service of citation except in a suit in which the termination of the parent-child relationship between an illegitimate child and its mother is sought, or in a suit to determine the paternity of the child. The statute does provide, however, that service of citation "may" be given to any person who has or who may assert an interest in the child and may be given to the unknown father of an illegitimate child. Section 11.-09(b). The statute specifically authorizes citation by publication in the event persons to be cited cannot be notified by personal service or by registered or certified mail and to persons whose names are unknown. Section 11.09(d). It is apparent from a reading of the statute that the legislature contemplated that service of citation might be given to persons other than those specially designated, including biological fathers of illegitimate children.

It was evidently the intent of the legislature that the trial court should have some discretion in determining the manner in which service of citation might be given with respect to persons interested in a suit affecting the parent-child relationship, even though such persons were not specifically designated as being entitled to service. In cases, such as the one before the court,

where the petition affirmatively shows the illegitimacy of the child and that the child's biological father is not a party to the proceedings, the court "may" require or cause the issuance of personal service of citation upon the father, or if the father's identity or whereabouts are unknown, may issue notice by constructive service of citation as authorized by the statute. Under special circumstances the trial court, in its discretion, might determine that any attempt at giving notice would be wholly ineffectual and proceed to trial without issuance of either personal or constructive service of citation upon the biological father.

This court cannot agree with Relators' argument that since the biological fathers were not made parties to the adoption proceedings and would not be bound by the judgment of adoption, they would not be prejudiced thereby. A similar contention was rejected in *Stanley v. Illinois,* supra, the U.S. Supreme Court stating that the biological father would suffer from deprivation of his children during the period that he was denied their custody and that merely according him the right to regain their custody in a subsequent proceeding would be futile and burdensome procedure. 92 S.Ct. 1211.

An adoption proceeding creates a new parent-child relationship and a child's biological father has such a substantial interest in the proceeding that due process requires he be afforded notice and opportunity to be heard. *Stanley v. Illinois,* supra; *Rothstein v. Lutheran Social Services of Wisconsin and Upper Michigan,* 405 U.S. 1051, 92 S.Ct. 1488, 31 L.Ed.2d 786 (1972); *State ex rel. Lewis v. Lutheran Social Services of Wisconsin,* 59 Wis.2d 1, 207 N.W.2d 826 (1973). It is not the ruling of this court that a biological father must be made a party to proceedings to terminate parental rights under Section 15.02 as a prerequisite to the entry of an order for adoption; only that due process requires he be given notice and opportunity to be heard. *In the Interest of K,* supra. See also *Furlow v. Harris County Child Welfare Unit,* 527 S.W.2d 802 (Tex.Civ.App.—Houston [1st] 1975, no writ).

Respondent, the Honorable Robert L. Lowry, acted within his discretion in refusing to proceed with the adoption proceedings until Relators make appropriate disclosure with respect to the names and whereabouts, if known, of the biological fathers of the children in question, and in requiring that such fathers be given appropriate notice and opportunity to be heard. Under the circumstances presented by Relators' petition for mandamus, there was no clear legal duty on the part of the trial court to proceed to trial in the adoption proceedings.

The Relators' petition for mandamus is denied.