**TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES, Petitioner,**

v.

**Charles SHERRY, Respondent.**

No. 00–0386.

Supreme Court of Texas.

Argued on April 4, 2001.

April 26, 2001.

---

**17.** *Ante* at 846.

**18.** 873 S.W.2d 353, 361 (Tex.1993).

Suzanne Laechelin, Asst. County Atty., Conroe, Gregory S. Coleman, Office of Atty. Gen. of Texas, Sarah Regina Guidry, Texas Dept. of Protective and Regulatory Services, Houston, John Cornyn, Andy Taylor, Office of the Atty. Gen. of Texas, Austin, Cecilia Gutierrez, Sharon Kay Yanger, Asst. County Attys., Conroe, Petitioner.

John Foster Pettit, Adair & Pettit, Conroe, for Respondent.

Justice Hankinson delivered the opinion of the Court.

Following the death of C.S.C.'s mother, Charles Sherry filed a suit affecting the parent-child relationship (SAPCR) in an attempt to establish his paternity and acquire managing conservatorship of C.S.C. The trial court dismissed Sherry's paternity claim, *see* TEX. FAM.CODE § 160.007(a)(1), and ruled that because Sherry did not meet the requirements of Texas Family Code § 102.003, he did not have standing to bring the SAPCR. The court of appeals reversed, holding that Sherry had a constitutional right to establish paternity. 43 S.W.3d 536, 536. The Texas Department of Protective and Regulatory Services petitioned for review. We conclude that Sherry's paternity suit is barred and that he does not have standing to bring a suit affecting the parent-child relationship. Accordingly, we reverse the court of appeals' judgment and dismiss Sherry's claims.

Sheila Welch gave birth to C.S.C. on January 7, 1992. At that time, Welch was living with Charlie Cannon. Welch listed Cannon as the father on C.S.C.'s birth certificate. Because Welch had been receiving state aid, in 1993, the Office of the Attorney General sued to establish paternity in order to impose child support and to seek reimbursement for the state's aid to C.S.C. Cannon agreed to be declared C.S.C.'s biological father and filed a statement of paternity. The trial court in that suit found that Cannon was C.S.C.'s biological father and entered a voluntary child-support order against him. Cannon continued to live with and support C.S.C. until his death in January 1995. Since Cannon's death, C.S.C. has received his social-security benefits.

In the fall of 1995, when C.S.C. was almost four years old, Sherry began living with C.S.C. and Welch. Although Sherry claims that he and Welch had a sexual relationship before C.S.C.'s birth and thus he may be C.S.C.'s biological father, he admits that he was not involved in C.S.C.'s life until he moved in with Welch. In January 1998, Welch entered a drug-rehabilitation program. Child Protective Services removed C.S.C. from the home, and with Welch's agreement, placed C.S.C. with the Harrison family, who lived in Welch's neighborhood. C.S.C. lived with the Harrisons until May 1998. During this four-month period, Sherry regularly visited C.S.C., but he did not seek custody or challenge the child's removal from the home he shared with Welch.

In May 1998, Welch was released from the drug-rehabilitation program, and C.S.C. resumed living with Welch and Sherry. Less than a month later, Welch died of a drug overdose. The Department of Protective and Regulatory Services then took custody of C.S.C. and filed suit seeking to be declared sole managing conservator. The next day, Sherry filed a SAPCR, in which he sought to be declared C.S.C.'s biological father and appointed sole man-

aging conservator. The trial court consolidated the two suits.

The Department challenged Sherry's standing to initiate a SAPCR and asserted that the statutory bar of successive paternity suits proscribed his attempt to establish paternity. *See* TEX. FAM.CODE § 160.007(a)(1). The trial court held an evidentiary hearing to determine whether Sherry had standing to bring a SAPCR to establish paternity and acquire conservatorship of C.S.C. After hearing testimony from seven witnesses, including Sherry, the trial court determined that because C.S.C. had lived outside Welch and Sherry's home for at least four of the six months before Sherry filed suit, Sherry was neither a person with actual care, control, and possession of the child, nor a person who resided with the child and her parent during the six months before filing the petition. *See* TEX. FAM.CODE §§ 102.003(9), (11).[1] Consequently, the trial court ruled that Sherry had no standing and dismissed his SAPCR. Sherry appealed. The court of appeals reversed and remanded, holding that under *In the Interest of J.W.T.*, 872 S.W.2d 189 (Tex. 1994), Sherry had a constitutional right to assert his paternity. 43 S.W.3d at 536.

We granted the Department's petition for review to determine whether Sherry's paternity claim is barred by Family Code § 160.007, and whether he has standing under Family Code §§ 102.003(9) and (11) to bring the SAPCR. We address these two issues in turn.

■ First, the Department argues that Sherry's paternity suit is barred by chapter 160 of the Texas Family Code because

C.S.C.'s paternity was previously adjudicated by a court of competent jurisdiction. Sherry responds that he did not receive notice of the first paternity adjudication, and that he has a constitutional right to attempt to establish his paternity. We agree with the Department.

Family Code § 160.007(a)(1) bars a paternity suit "if final judgment has been rendered by a court of competent jurisdiction: (1) adjudicating a named individual to be the biological father of the child." The parties do not dispute that section 160.007's requirements were satisfied. In 1993, Cannon voluntarily admitted he was C.S.C.'s father and assumed financial responsibility for her. After determining that it had "jurisdiction of the parties and subject matter of this suit," the trial court expressly adjudicated Cannon to be C.S.C.'s biological father. At the trial court's hearing in this case, when asked why he did not protest the order adjudicating Cannon to be C.S.C.'s father, Sherry responded, "because Sheila and I had an agreement on that."

■ Sherry claims that he did not receive notice of the 1993 paternity suit under Family Code § 102.009(a)(8). Section 102.009 identifies those persons entitled to be served with citation in a SAPCR and includes "an alleged father." TEX. FAM. CODE § 102.009(a)(8). When the Attorney General filed the 1993 paternity suit, he alleged in the pleadings that Cannon was C.S.C.'s father. The Attorney General did not allege that Sherry was C.S.C.'s father. Thus, Cannon was the only "alleged father," as the term is used in the statute, who was entitled to notice. TEX. FAM.CODE

---

1. Sections 102.003(9) and (11) were amended in 1999 to change "not less than six months preceding" to "at least six months ending not more than 90 days preceding." Act of May 30, 1999, 76th Leg., R.S., ch. 1390, § 2, 1999 Tex.Gen.Laws 4569, 4696. Those changes, however, "apply only to a suit affecting the parent-child relationship filed on or after the effective date of this Act," which was September 1, 1999. Act of May 30, 1999, 76th Leg., R.S., ch. 1390, § 51(c), 1999 Tex.Gen.Laws 4569, 4710.

§ 102.009(a)(8); *see, e.g., Villery v. Solomon,* 16 S.W.3d 106, 109 (Tex.App.—Houston [1st Dist.] 2000, no pet.).

■ Sherry also maintains that he was entitled to service under section 102.009(b), which states that "[c]itation may be served on any other person who has or who may assert an interest in the child." TEX. FAM.CODE § 102.009(b). This provision does not require service, however; it merely allows voluntary service by the plaintiff or at the court's discretion. *See, e.g., Rogers v. Lowry,* 546 S.W.2d 881, 883 (Tex.Civ.App.—Houston [1st Dist.] 1977, orig. proceeding). Thus, we conclude that Sherry was not statutorily entitled to notice of the 1993 paternity action and that C.S.C.'s paternity was properly adjudicated.

■ Sherry next argues that even if his paternity claim is barred by section 160.007, he has a constitutional right to assert his paternity under our holding in *J.W.T.,* 872 S.W.2d 189. Sherry, however, did not assert his constitutional claims in his trial court pleadings or at the trial court hearing on standing. In *Dreyer v. Greene,* 871 S.W.2d 697 (Tex.1993), a paternity suit, we held that "[a]s a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal." *Id.* at 698. We follow that rule here and thus do not consider Sherry's constitutional arguments. Consequently, we conclude that Sherry's paternity suit is barred.

■ In the second issue, the Department argues that under section 102 .003 of the Family Code, Sherry lacks standing to bring a SAPCR. Sherry contends that because C.S.C.'s legal residence was his and Welch's home, and because he helped care for C.S.C. from the fall of 1995 to January 1998, he meets the standing re-quirements. Again, we agree with the Department.

■ When Sherry filed his suit, the Family Code granted standing to "a person who has had actual care, control, and possession of the child for not less than six months preceding the filing of the petition," TEX. FAM.CODE § 102.003(9) (amended 1999), or to "a person with whom the child and the child's guardian, managing conservator, or parent have resided for not less than six months preceding the filing of the petition if the child's guardian, managing conservator, or parent is deceased at the time of the filing of the petition." TEX. FAM.CODE § 102.003(11) (amended 1999). As the Department points out, mere "legal residence" is not sufficient to satisfy the "have resided" requirement in subsection (11). Although the law sometimes gives a technical meaning to the noun "residence," it does not similarly interpret the verb "resided," and there is no indication that the Legislature meant anything more than the usual meaning of those words. *See* TEX. GOV'T CODE § 311.011(a). We thus read "have resided" to mean living together in the same household. Further, under *Jones v. Fowler,* 969 S.W.2d 429, 433 (Tex. 1998), the six-month periods both subsections (9) and (11) require must immediately precede the filing of the petition. Thus, even if Sherry did, at some point, care for and live with C.S.C. for more than six months, the proper inquiry is whether he did so for the six months immediately before he filed his petition.

It is undisputed that C.S.C. resided with another family for approximately four of the six months before Sherry filed the SAPCR. Although Sherry visited with C.S.C. during that period, and although C.S.C.'s "legal residence" for purposes of school attendance continued to be Sherry and Welch's home, C.S.C. was in the Harrisons' custody, care, and possession.

Sherry also testified that Welch did not consult with him before agreeing to let C.S.C. live with the Harrisons, and that he knew about the arrangement but never objected. Further, at the standing hearing, Sherry admitted that C.S.C. "was not in [his] actual care, custody, [and] control" and did not "reside with [him] for a full six-month period of time, six months prior to when [he] filed [his] lawsuit." We thus agree with the trial court's determination that Sherry did not have standing under section 102.003 to bring a SAPCR.

Because we conclude that the Family Code bars Sherry's paternity suit, Sherry did not preserve his constitutional claims for appeal, and Sherry does not have standing under the Family Code to bring a SAPCR, we reverse the judgment of the court of appeals and dismiss Sherry's claims.