In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00336-CV
_____


IN RE COMMITMENT OF JAMES ANDREW MCCORMACK

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No.14-02-01498 CV

**MEMORANDUM OPINION**

James Andrew McCormack challenges his commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014). In four issues presented for his appeal, McCormack contends the civil commitment proceeding is barred because the prison system failed to provide notice of his anticipated release date to the assessment provider within the time specified by the applicable statute, urges the trial court committed reversible error by denying McCormack's request to videotape the post-petition examination conducted by the State's expert, challenges the factual sufficiency of the evidence

1

supporting the jury's verdict, and argues this Court's decision in *In re Commitment of Richard*, No. 09-13-00539-CV, 2014 WL 2931852 (Tex. App.—Beaumont June 26, 2014, pet. denied) (mem. op.), *cert. denied*, 135 S.Ct. 1747 (U.S. Apr. 6, 2015), renders Chapter 841 of the Texas Health and Safety Code unconstitutional. We find that McCormack's issues are without merit and we affirm the trial court's judgment and order of civil commitment.

Notice of Anticipated Release

McCormack contends the State's petition is barred because the Texas Department of Corrections gave the multidisciplinary team notice of McCormack's anticipated release less than sixteen months before his date of discharge.[1] Section 841.021 provides, in relevant part:

> (a) Before the person's anticipated release date, the Texas Department of Criminal Justice shall give to the multidisciplinary team established under Section 841.022 written notice of the anticipated release of a person who:
>> (1) is serving a sentence for:
>>> (A) a sexually violent offense . . . and
>> (2) may be a repeat sexually violent offender.
>
> ….

---

[1]The multidisciplinary team assesses whether the person is a repeat sexually violent offender and whether the person is likely to commit a sexually violent offense after release or discharge, gives notice of its assessment to the Texas Department of Criminal Justice, and recommends the assessment of the person for a behavioral abnormality. *See* Tex. Health & Safety Code Ann. § 841.022.

(c) The Texas Department of Criminal Justice . . . shall give the notice described by Subsection (a) . . . not later than the first day of the 16th month before the person's anticipated release or discharge date, but under exigent circumstances may give the notice at any time before the anticipated release or discharge date.

Tex. Health & Safety Code Ann. § 841.021(a), (c).

In his brief on appeal, McCormack argues section 841.021(c) establishes a mandatory duty for the Texas Department of Criminal Justice (TDCJ) to send written notice to the multidisciplinary team not later than the first day of the sixteenth month before his anticipated release or discharge, and he argues that section 841.021 does not permit the State to pursue a person's civil commitment unless exigent circumstances are shown for the TDCJ to give notice to the multidisciplinary team on a later date. *See generally* Tex. Health & Safety Code Ann. § 841.021(c). In its brief on appeal, the State concedes that the notice was given approximately six months prior to discharge, but argues section 841.1463 of the Texas Health and Safety Code specifically negates McCormack's claim that the State is barred from filing a petition for civil commitment. Tex. Health & Safety Code Ann. § 841.1463. In his reply brief, McCormack contends the State has mischaracterized his argument as a jurisdictional challenge.

McCormack pleaded late notice as an affirmative defense in his first amended answer. In a motion to strike, the State alleged the new pleading raised a

3

new affirmative defense requiring evidence after the discovery cutoff. The trial court heard the State's motion before jury selection commenced. The trial court did not strike McCormack's first amended answer. TDCJ's written notice to the multidisciplinary team was not offered into evidence during the trial, and McCormack neither objected to the charge nor requested a submission of a jury question with regard to the State's compliance with a statutory notice requirement.

In his motion for new trial, which was overruled by operation of law, McCormack alleged:

> This Court erred when it overruled the respondent's objection to petitioner's failure to comply with Chapter 841.021(c) of the Texas Health & Safety Code which requires the Texas Department of Criminal Justice or the Department of State Health Services, as appropriate, [s]hall give notice described by Subsection (a) or (b) not later than the first day of the 16th month before the person's anticipated release or discharge date, but under exigent circumstances may give the notice at any time before the anticipated release or discharge date.

The objection the trial court considered before trial was the State's motion to strike McCormack's amended answer. Assuming, however, that McCormack's motion for new trial was sufficient to raise a complaint regarding the State's failure to comply with the time provisions of section 841.021(c), no evidence of the date on which TDCJ provided written notice to the multidisciplinary team was offered into evidence during the trial.

4

McCormack references a letter attached as an exhibit to the State's petition for civil commitment. The State filed its petition on February 7, 2014. In its petition, the State alleged that McCormack was scheduled to be released from TDCJ's custody "on or before June 30, 2014." The State attached a copy of a letter from a Rehabilitation Programs Division manager, dated January 30, 2014, which states, "On December 12, 2013, TDCJ gave notice to the multidisciplinary team (MDT) of the anticipated release of [McCormack] by Discharge on June 30, 2014. The MDT determined that the offender is a repeat sexually violent offender and is likely to commit a sexually violent offense after release or discharge . . . ." This letter was not offered in evidence during the trial. McCormack testified that he would complete his sentence twenty-seven days after the date of his trial, but the record of the trial contains no evidence that the required notice was not provided within the time specified by statute.

The party asserting an affirmative defense bears the initial burden to plead, prove, and secure findings on its defense. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988) (discussing the affirmative defense of statute of limitations). "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." Tex. R. Civ. P. 279. Because McCormack failed to

5

submit evidence and secure a finding from the jury on his affirmative defense, he waived any error. *See id.* McCormack did not pursue his complaint to an adverse ruling before the trial court. *See* Tex. R. App. P. 33.1. We overrule issue one.

Request to Videotape Examination

McCormack contends the trial court committed reversible error when it refused to allow his examination by the State's expert to be videotaped. The Texas Health and Safety Code provides that in a Chapter 841 civil commitment proceeding "[t]he person and the state are each entitled to an immediate examination of the person by an expert." Tex. Health & Safety Code Ann. § 841.061(c). McCormack argues that by refusing his request to videotape his examination by the State's expert, the trial court violated McCormack's statutory and due process right to cross-examine all witnesses.

In a recent appeal, we considered the issue of whether the trial court erred in denying a respondent's request to videotape his section 841.061(c) examination. *See In re Commitment of Ramsey*, No. 09-14-00304-CV, 2015 WL 1360039, at *3-5 (Tex. App.—Beaumont Mar. 26, 2015, pet. filed) (mem. op.). We held that section 841.061 does not expressly grant the right to a videotaped mental evaluation and we concluded that the right to cross-examine witnesses, as provided in section 841.061, does not include a right to videotape the psychiatric

examination. *Id.* at \*4. In *Ramsey*, we noted that the respondent could have deposed the State's expert witness before trial to explore her opinions and testimony. *Id*. at \*4-5. The respondent in that case chose to cross-examine the State's expert at trial. *Id.* at \*5. We rejected the respondent's argument that videotaping the examination was necessary to his exercise of his right to cross-examine the State's expert because even without the videotape, the respondent could have (1) identified the inconsistencies he believed to exist, (2) cross-examined the expert about the questions she asked during her interview, (3) cross-examined the expert about her testimony regarding the mental evaluation, or (4) presented his own expert at trial to counter the conclusions presented by the State's expert. *Id.* We noted that the jury heard the expert's diagnosis of the respondent and that, based on her training, her experience, the records she reviewed, and her interview with the respondent, she believes he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* Given the evidence presented at trial, we concluded the ruling was harmless. *See id*.; *see also* Tex. R. App. P. 44.1.

McCormack contends that, without a videotaped examination, he was unable to contradict the State's psychiatrist, Dr. David Self's testimony that during the mental examination, McCormack described grooming and sexually assaulting a

7

particular child. However, the record does not demonstrate that McCormack was unable to effectively cross-examine Dr. Self. In his trial testimony, McCormack stated that he told Dr. Self that he was grooming the child by asking "questions to lead to sex" and that he told Dr. Self about speaking to the child about McCormack's vibrator, but McCormack claimed to have no memory of telling Dr. Self that he propositioned the child. Dr. Self testified that in the course of the mental examination, McCormack admitted to Dr. Self that McCormack propositioned the child. Counsel for McCormack cross-examined Dr. Self but did not ask him any questions about McCormack's admission to having propositioned the child. McCormack could have confronted Dr. Self about the discrepancies between the two witnesses' accounts of the statements made by McCormack during the mental examination, but he did not attempt to test Dr. Self's recollection concerning their interview.

The trial court did not deprive McCormack of his right to cross-examine the State's witness. Furthermore, we are not persuaded that we misinterpreted section 841.061 of the Texas Health and Safety Code in *Ramsey*. *See* 2015 WL 1360039, at *4. We overrule issue two.

Factual Sufficiency

McCormack contends the evidence is factually insufficient to support the jury's verdict that he is a sexually violent predator because the great weight and preponderance of the evidence supports a finding that McCormack has learned to control his behavior by learning and internalizing concepts from an informal sex offender treatment program.

In the trial of a civil commitment petition filed under Chapter 841 of the Texas Health and Safety Code, the State must prove, beyond a reasonable doubt, that the person to be civilly committed is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a). When we consider an appellate challenge to the factual sufficiency of the evidence supporting the jury's finding that a person is a sexually violent predator, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Tex. Health & Safety Code Ann. § 841.003(a). McCormack does not challenge his status as a repeat sexually violent

offender, but he argues that the great weight and preponderance of the evidence weighs against a finding that he currently suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. A "'behavioral abnormality' means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." Tex. Health & Safety Code Ann. § 841.002(2). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

The State read McCormack's pre-trial admissions to the jury, including his admissions to having two convictions for aggravated sexual assault of an eleven-year-old boy, to being sexually aroused by young boys, to being impulsive, and to needing sex offender treatment. McCormack admitted that he is sexually aroused by thinking about giving boys haircuts and continues to struggle with becoming sexually aroused by giving boys haircuts. In his testimony before the jury, McCormack admitted that he is a pedophile and that he has a hair fetish. He stated

10

that cutting hair, followed by sexually oriented conversation, was an important step in molesting a child. While serving his prison term, McCormack requested and received a work assignment as a barber.

McCormack stated that he was initially approved for the eighteen-month sex offender treatment program, but he claimed he signed a document called a "serve-all" cancelling his participation in sex offender treatment after prison officials delayed his starting date until it was too late for him to receive eighteen months of parole for completing the program. McCormack testified that on his own he participated for six or seven years in a Christian sex offender treatment program called Freedom Support. McCormack explained that he offended against children as a way to regain control in his life during a period of marital discord and financial instability. He understood that his fetish was in some manner connected to an early childhood experience with his father. According to McCormack, his pedophilia was an expression of his need for male confirmation and his struggle with homosexuality. He engaged in a cycle where he attempted to cope with his frustrations by fantasizing, then acting out. While participating in Freedom Support, he learned Old Testament imagery and scripture memorization techniques as aversive therapy to control his neuroses and sexual thoughts. During cross-examination, McCormack admitted that in his deposition he was asked why he

11

offended against one of his victims and he responded, "'That's a good question. I think I need more therapy on that.'" McCormack explained that he was being evasive because he was tired at that point in his deposition. He generally refused to answer questions about uncharged conduct he had admitted to committing in previous interviews.

The State presented the expert testimony of Dr. Self, who provided his professional opinion that McCormack suffers from a behavioral abnormality that makes him likely to commit a predatory act of sexual violence. According to Dr. Self, the most prominent risk factors for repeat sexual violence are a history of deviant sexual interest coupled with a history of criminal sexual activity. McCormack's primary sexual deviance issue was pedophilia. Dr. Self stated that he considers details of the criminal history. A pedophile who prefers male victims is at the highest risk for re-offending of the entire population of sex offenders, and McCormack had male victims from age eight to sixteen. For the most part, McCormack's victims were not relatives, which places him at greater risk than an incest perpetrator but at less risk than an offender against total strangers. Also, it appeared the relationships he developed were for the purpose of victimization. McCormack was almost sixty-three years old at the time of trial. At that age, the

risk of offense diminishes for the entire population, but offending persists the longest with pedophiles who offend against young boys.

Dr. Self explained that pedophilia is a chronic condition that can be managed but not cured. In his opinion, McCormack's pedophilia is active. Dr. Self had never heard of the program in which McCormack participated. He observed that after six years of treatment he would expect McCormack to demonstrate less evasiveness and better recollection of his sexual offending than he displayed in his trial testimony. McCormack's familiarity with sex offender treatment concepts showed that he had been exposed to those concepts, but in Dr. Self's opinion, did not establish that McCormack does not have a behavioral abnormality.

McCormack argues that Dr. Self's testimony lacks a sufficient evidentiary basis because his opinion is based solely upon what Dr. Self described as McCormack's inability to accept his problem and internalize the concepts of the sex offender treatment program. Noting that Dr. Self admitted that McCormack was able to effectively discuss the sex offender treatment concepts such as thinking errors and triggers, McCormack argues the jury's finding that he is a sexually violent predator is against the great weight and preponderance of the evidence in light of the evidence presented concerning his progress in sex offender treatment.

Dr. Self did not base his opinion solely upon a failure by McCormack to accept responsibility for the sexual offenses that he committed. Dr. Self explained that the important considerations in reaching his opinion that McCormack has a behavioral abnormality include a history of deviant sexual interest coupled with a history of criminal sexual activity, and the active presence of a chronic psychiatric condition, pedophilia. McCormack demonstrated his ability to discuss sex offender treatment concepts, but Dr. Self detected what he referred to as "cognitive discord" in McCormack's impaired recollection about matters that would only hurt his case and his decision to forego formal sex offender treatment because it would not benefit him with regard to hastening his release from prison. The evidence that McCormack has acquired insight into his condition does not compel the conclusion that he has acquired control over his behavior sufficient to ensure that he will not recidivate. McCormack did not present testimony from an expert to refute Dr. Self's analysis, to provide a psychiatric basis for concluding that a person who is conversant with sex offender treatment concepts is not likely to engage in a predatory act of sexual violence, to assess the effectiveness and reliability of Freedom Support, or to corroborate McCormack's participation and progress in Freedom Support. McCormack himself admitted he needs sex offender treatment.

Dr. Self's opinion testimony represents "a reasoned judgment based upon established research and techniques for his profession and not the mere *ipse dixit* of a credentialed witness." *Day*, 342 S.W.3d at 206. The jury, acting in its exclusive role as the sole judge of the credibility of the witnesses and the weight to be given their testimony, resolved any conflicts and contradictions in the evidence and accepted the opinions of the State's experts. *See In re Commitment of Kalati*, 370 S.W.3d 435, 439 (Tex. App.—Beaumont 2012, pet. denied). Weighing all of the evidence, we conclude the verdict does not reflect a risk of injustice that would compel ordering a new trial. *Day*, 342 S.W.3d at 213. We overrule issue three.

*In re Commitment of Richard*

McCormack contends our opinion in *In Re Commitment of Richard*, 2014 WL 2931852, issued after his trial, retroactively rendered all of Chapter 841 of the Texas Health and Safety Code facially unconstitutional. Constitutional claims and challenges to the constitutionality of a state statute must be asserted in the trial court in order to be raised in the court of appeals. *See Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001) (holding that failure to assert a constitutional claim in trial court bars appellate review of claim); *see also In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2005) (noting that constitutional complaints may be waived), *cert. denied*, 546 U.S. 961 (2005). McCormack does

15

not cite this Court to any place in the record where he made a constitutional challenge to the statute in the trial court, but he argues that his constitutional claim is not subject to procedural default because we decided *Richard* approximately three weeks after his trial.

McCormack contends this Court's reasoning in *Richard* was contrary to federal constitutional law, which he argues "clearly requires as a condition of involuntary civil commitment some type of 'mental condition' or 'ailment of the mind' even though a 'mental illness' is not required." *See generally Kansas v. Hendricks*, 521 U.S. 346, 358-59 (1997). We previously rejected a facial challenge to the statute in another appeal that raised the same argument that McCormack makes in this appeal. *See In re Commitment of Lucero*, No. 09-14-00157-CV, 2015 WL 474604, at *9-10 (Tex. App.—Beaumont Feb. 5, 2015, pet. denied) (mem. op.). We continue to follow *Lucero* and decline to revisit our precedent in this case, where the evidence shows that Dr. Self gave McCormack a diagnosis of pedophilic disorder, and McCormack admitted he is a pedophile and that he is sexually aroused by young boys.

McCormack has not demonstrated on appeal that Chapter 841 of the Texas Health and Safety Code is unconstitutional. *See id*. We overrule issue four and affirm the trial court's judgment and order of civil commitment.

16

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on March 10, 2015
Opinion Delivered June 25, 2015

Before McKeithen, C.J., Kreger and Johnson, JJ.