

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-16-00445-CV

_____


IN THE INTEREST OF R.J., A CHILD

---

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-599129-16

---

Before Gabriel, Kerr, and Pittman, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

The Office of the Attorney General of Texas initiated this case seeking an order establishing conservatorship and directing Appellant J.J. (Father) to pay child support for his minor son, R.J.[1] Following an evidentiary hearing on the OAG's petition at which Father and L.V. (Mother) testified, the trial court ordered Father to pay child support of $300 per month until R.J. turns 18 (or until another of the order's conditions is satisfied) and retroactive child support totaling $2,000, to be paid out at $25 per month.

Appealing pro se, Father complains that the evidence is both legally and factually insufficient to justify the child-support order and that the trial court abused its discretion by not continuing the hearing date.[2] He does not complain about the trial court's order awarding sole managing conservatorship to Mother. We affirm.

## Background

R.J. was born in 2007. At the time of the October 24, 2016 hearing, Father had been incarcerated since March 2015 for indecency with R.J. If he serves his entire sentence, Father will not be released from prison until April 2023.

---

[1]As always, we do not use real names when a case involves a child. *See* Tex. Fam. Code Ann. § 109.002(d).

[2]The OAG interprets Father's second appellate issue as complaining of the denial of appointed counsel, but as we will explain, neither the record nor Father's brief fairly raises such an issue; Father never asked the trial court to appoint a lawyer to represent him.

### *Procedural History*

When he answered the OAG's petition in August 2016, Father sought a bench warrant so that he could appear at the hearing, asserting that fairness required that he be present "to testify in his own behalf and to assist counsel in the presentation of evidence, cross-examination of witnesses and defense of this suit."

In October 2016, two weeks before the scheduled hearing, Father again asked for a bench warrant in an alternative continuance motion that did not refer to legal counsel at all. Father stated that if a bench warrant was not issued, Father wanted a "continuance of this action until such time as the respondent is released from the penitentiary and is able to appear in court and defend this suit on his own volition. In the alternative, Respondent has asked the court to order that appropriate participation in the proceedings be accomplished by tele or video conference or any other meaningful means available."

Rather than having Father brought to court on October 24, the trial court granted Father's request to participate in the hearing by telephone. When asked on the record if he was ready to proceed, Father said, "No, sir, I'd like to consult with counsel. I've never – I'm not aware of the procedure of my rights." The trial court then asked if Father had a lawyer he intended to consult with, to which Father responded that he did not, but "when I get out, if I can ask for a continuance, I would like to hire an attorney." Father did not ask for appointed counsel; the trial court denied Father's request for a continuance.

***Parties' Testimony***

Mother and Father were the only two witnesses at the hearing. Mother testified that Father owns interests in several rental properties from which he derives income that she estimated at $3,000 per month and also receives a monthly "military check" that Mother understood was "over a thousand dollars." Father denied owning any "rental properties" but testified that he previously owned a house in Fort Worth that was sold two or three years before the hearing, that he owes his brother rent on another property (owned by his brother) that Mother had been living in, and that he owns an interest in a different property from which he is not receiving rental payments.

As for other sources of income, Father testified that he receives roughly $100 per month from his brother, and nothing else. There was also this exchange about money from the military:

> [FATHER]: I was receiving a disability from the VA, it's about $1,800.00.
>
> THE COURT: Are you still receiving that check?
>
> [FATHER]: No. The bank that was getting the money supposedly [Mother] took all the money with my credit cards unauthorized. And now they closed the account and I don't know where the money is going. As far as I know when you go to jail, they stop it.

No documents were discussed or introduced into evidence at the hearing, nor was there additional testimony about Father's VA disability payment.

4

At the conclusion of the hearing, the trial court stated: "I'm going to find [Father] does have a source of income and order current child support of $300.00 a month beginning November 1 of 2016. I'm going to find that he has the sources from his VA disability."

The trial court then also announced that it would order "$2,000.00 in retroactive child support and order that paid at 25 a month." The resulting written Order in Suit Affecting the Parent–Child Relationship contains the trial court's "Findings Regarding Medical Support and Child Support Obligations" that Father's "gross monthly resources are $1,720.00," with "[r]easonable cost, based upon 9% of [Father's] gross monthly resources is $155.00." The trial court's separate "Child Support Findings" were as follows:

> It is FOUND:
>
> (1) the net resources of [Father] per month are *$1,498.44*;
>
> (2) the percentage applied to [Father's] net resources for child support is *20%*.
>
> THE COURT MAKES A FINDING THAT [FATHER] HAS A SOURCE OF INCOME AND SETS CURRENT CHILD SUPPORT AT THIS TIME. THE COURT DECLINES TO SET CURRENT MEDICAL SUPPORT AT THIS TIME.

Based on these findings, the trial court ordered Father to pay "current child support of $300.00 each month" beginning November 1, 2016, and retroactive child support for the period between June 2012 and October 2016 in the amount of $2,000, payable at $25 per month beginning October 24, 2016.

**Father's Issues on Appeal**

In what we construe as two issues, Father complains that the evidence is insufficient to support the child-support award and that he suffered a "due process violation – denial of fair trial" because the trial court denied his request for a continuance until after he was "released from the penitentiary," at which time, he asserted, he could hire a lawyer.

## I. Child-support award

### A. Standard of Review

A trial court has discretion to set child support within the parameters provided by the family code, and we will not disturb a child-support order unless the complaining party shows a clear abuse of discretion. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011); *see* Tex. Fam. Code Ann. §§ 154.121–.123. A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles, or when it fails to analyze or apply the law correctly. *Iliff*, 339 S.W.3d at 78. Legal- and factual-sufficiency challenges are not independent grounds of error but instead are relevant factors in assessing whether the trial court abused its discretion. *Newberry v. Bohn–Newberry*, 146 S.W.3d 233, 235 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

When an appellant alleges that the trial court abused its discretion because the evidence was insufficient, we apply a two-pronged test: first, we ask whether the trial court had sufficient information on which to exercise its discretion; and second, we

determine whether the trial court abused its discretion by causing the child-support order to be manifestly unjust or unfair. *Id.* The trial court does not abuse its discretion when its decision is based on conflicting evidence or where some evidence of probative and substantive character exists to support the child-support order. *Id.* We view the evidence in the light most favorable to the trial court's decision and indulge every reasonable presumption in favor of its judgment. *Id.*; *see also Finley v. Finley*, No. 02-11-00045-CV, 2015 WL 294012, at *4 (Tex. App.—Fort Worth Jan. 22, 2015, no pet.)(per curiam)(mem. op.).

### B. Discussion

To determine a child-support obligation, the trial court must first calculate the obligor's (here, Father's) net resources. Tex. Fam. Code Ann. § 154.062. "Net resources" is broadly defined and includes not only "net rental income" but also "United States Department of Veterans Affairs disability benefits other than non-service-connected disability pension benefits, as defined by 38 U.S.C. Section 101(17)." *Id.* § 154.062(b)(4), (5).

The quality and amount of proof required to establish an obligor's resources is not onerous. Child-support awards have been upheld upon evidence that is little more than one parent's testimony about what he or she understands the other parent earns. *See, e.g.*, *Newberry*, 146 S.W.3d at 235–36 (holding that wife's uncontroverted testimony about husband's yearly income constituted "some evidence" to support child-support award).

7

Similarly, when a husband testified that he had a business partner with whom he split the monthly income from a limousine business, but the wife countered that he had never before claimed to have a partner and that the business's website contained only the husband's contact information, the trial court was within its discretion to reject the husband's argument for a 50% net-resources reduction. *Pirzada v. Rice*, No. 02-14-00145-CV, 2015 WL 1743461, at *4 (Tex. App.—Fort Worth Apr. 16, 2015, no pet.) (mem. op.) (observing that "[a]lthough Pirzada testified that he had a business partner who was entitled to 50% of the amount reflected in the bank statements, . . . the trial court could have discounted that testimony based on Rice's statements that Pirzada never had a business partner").

Here, the trial court heard not only Mother's testimony that Father received rental income of $3,000 (which, judging from its eventual child-support award, the court apparently did not take into account) and a "military check" that she thought was over $1,000 per month but also Father's own acknowledgement of a monthly VA disability payment of $1,800. Although Father claimed that this payment might have stopped because he was incarcerated, his testimony on this score was vague at best: Father asserted that the bank account into which those VA deposits were being made had been closed and that he "d[id]n't know where the money is going. As far as [he] kn[ew] when you go to jail, they stop it."

The trial court's gross-resources finding of $1,720 per month is less than the $1,800 that Father admitted to having received from the VA, and Father presented no

8

evidence that, in fact, the VA terminates disability payments when a recipient is in prison or that the VA had actually terminated his own such payments. Having determined gross resources in an amount that was within its discretion based on the evidence, the trial court then applied the family-code guidelines to arrive at a net-resources amount of $1,498.44, from which it then calculated 20% as Father's current child-support obligation. *See* Tex. Fam. Code Ann. § 154.125(a), (b). The statutory guidelines are presumptively reasonable, and a support order that conforms to the guidelines is "presumed to be in the best interest of the child." *Id.* § 154.122(a). As for the trial court's assessing $2,000 in retroactive child support, that too was presumptively reasonable:

> It is presumed that a court order limiting the amount of retroactive child support to an amount that does not exceed the total amount of support that would have been due for the four years preceding the date the petition seeking support was filed is reasonable and in the best interest of the child.

*Id.* § 154.131(c).

Here, because even one year of child support at $300 per month would have been more than $2,000, the statutory presumption of reasonableness applies to the retroactive-child-support order.

In sum, viewing the testimony in the light most favorable to the trial court's findings and adhering to the cited provisions of the family code, we hold that sufficient evidence existed on which the trial court could exercise its discretion and that the trial court's child-support order was not manifestly unjust or unfair.

9

We overrule Father's first issue.

## II. Due-process issue; denial of continuance

### A. Standard of review

We review a trial court's order denying a motion for continuance for an abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). And if Father had asked for appointed counsel—a request we cannot find in the record— the trial court's implicit denial of that request would be similarly reviewed for an abuse of discretion because an action to establish child support is not one that implicates a constitutional right to counsel.

The Constitution of course guarantees a defendant the right to assistance of counsel in a criminal prosecution. *Gideon v. Wainwright*, 372 U.S. 335, 339–45, 83 S. Ct. 792, 793–97 (1963); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Similarly, certain Texas statutes in the family-law context call for appointed counsel as a matter of right, such as when the State seeks to terminate the rights of a parent who falls within a specific statutory category. *See, e.g.*, Tex. Fam. Code Ann. § 107.013(a); *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003) ("In Texas, there is a statutory right to counsel for indigent persons in parental-rights termination cases."). Otherwise, without some statute codifying a right to counsel, a litigant such as Father can only ask for appointed counsel, with no guarantee that he will get one. *See, e.g.*, Tex. Gov't Code Ann. § 24.016 ("A district judge may appoint counsel to attend to the cause of a

party who makes an affidavit that he is too poor to employ counsel to attend to the cause.").

### B. Discussion

Although, as we noted earlier, the OAG briefed Father's second issue as one involving a request for appointed counsel, the entirety of the record and the briefing convince us that Father's second appellate complaint is that the trial court should have granted a continuance. Indeed, when the trial court asked Father toward the end of the hearing if he wanted to add anything to his testimony, Father's only response relating to his issues in this appeal was that "[m]y testimony is that I wanted to have this postponed."

In his brief, Father couched this issue in terms of "due process," but the record does not show that he raised this argument to the trial court, as he was required to do.[3] With certain exceptions not applicable here, a party can waive even error of a constitutional dimension by not raising it in the trial court and obtaining a ruling. *See*

---

[3]Father's only mention of due process appears in his October 2016 motion for continuance, and it is in a different context: "Respondent alleges that he is entitled to be present at any proceedings affecting parent-child relationship as a matter of due process and equal protection of the law. *See Stanley v.* [*Illinois*] 405 U.S. 645 (1972). *In the Interest of G.M.* 596 S.W.2d 846 (Tex. 1980) and cases cited [therein]." Because the trial court granted Father's request to participate in the hearing remotely, Father was "present" at the proceedings; no due-process issues were implicated. *Cf. In re R.C.R.*, 230 S.W.3d 423, 426 (Tex. App.—Fort Worth 2007, no pet.) (stating that "if a court determines that a pro se inmate in a civil action is not entitled to leave prison to appear personally in court, the inmate should be allowed to proceed by affidavit, deposition, telephone, or other means").

Tex. R. App. P. 33.1; *see*, *e.g.*, *In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2005) (noting that "rules governing error preservation must be followed in cases involving termination of parental rights, as in other cases in which a complaint is based on constitutional error"); *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001) (holding that failure to assert constitutional claim in trial court bars appellate review of that claim). Father has waived any due-process concerns with the trial court's having denied his continuance motion.

In any event, the trial court did not abuse its discretion by denying Father's motion for continuance—particularly where the court allowed him to participate telephonically, which was one of Father's alternative proposals if he could not have a continuance. ("In the alternative, Respondent has asked the court to order that appropriate participation in the proceedings be accomplished by tele or video conference or any other meaningful means available.") Under the invited-error doctrine, a party cannot successfully lodge an appellate challenge to a trial-court action that the complaining party asked it to take. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005) (noting that "a party cannot complain on appeal that the trial court took a specific action that the complaining party requested").

Accordingly, we overrule Father's second issue.

## Conclusion

Having overruled Father's two issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  March 21, 2019