

# NUMBER 13-23-00100-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF F.L., ET AL., MINOR CHILDREN

### On appeal from the County Court at Law No. 5
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Longoria
### Memorandum Opinion by Chief Justice Contreras

Father[1] appeals the trial court's judgment terminating his parental rights to C.R. and I.R.[2] By his sole issue, Father contends that his constitutional due process rights were violated when the trial court permitted one witness to testify via Zoom video

---

[1] We identify the parties and children in this case by aliases. *See* TEX. R. APP. P. 9.8(b)(2).

[2] The trial court severed this termination suit from the original action which also included Mother and two potential fathers of F.L., a minor child. In a bench trial, the trial court terminated Mother's rights to F.L., C.R., and I.R., and the unknown fathers' rights to F.L. This case only concerns Father's parental rights to C.R. and I.R.

conference software during the termination proceedings. We affirm the trial court's judgment.

## I.  BACKGROUND

A jury trial began on February 14, 2023. As a preliminary matter, citing the supreme court's COVID emergency rules purportedly in effect at the time and a lack of sufficient notice of an in-person trial, the Department of Family and Protective Services (the Department) requested that the trial court allow a few of its witnesses to testify via Zoom. Father objected as follows:

> [Father] came down from Oregon for this trial and I think that the Zoom interface defeats the purpose of that. We don't get to see how [the jury] react[s]. Most importantly, the jury doesn't get to see how the witnesses react in court. I believe without our agreement, we can't do it, Judge, and I think it would be improper in this case.
>
> . . . .
>
> Part of the problem when we made the determination to go with the jury was, you know, okay, we had to weigh it out. You know, I talked to my client that the benefit of being on a bench trial would be you can stay up in Oregon. You could have your witnesses there come to testify on Zoom. We weren't able to prepare any of that, Judge, because here we are for a jury trial today.

The trial court stated that it would not make a blanket ruling as to the ability of all witnesses to testify remotely. Instead, it would decide the issue on an individual basis.

After the close of testimony on the first day of trial, the trial court heard the Department's request to allow one of its witnesses, Raquel Garcilazo, to testify via Zoom the next morning to prove up a previously-admitted exhibit which Garcilazo drafted. The Department asserted that Garcilazo was based in Harlingen and "cannot travel here [to Nueces County] to be here in person." In response, Father renewed his objection to any

witnesses testifying via Zoom:

> Judge, I object. I think that's an expert opinion and she needs to be here. My client, he came all the way from out of state for this jury trial, Judge. I don't think it would be fair to him to make him come all this way for our jury trial and let everyone, at the last minute, be on Zoom. If that were the case, we should have just waived the jury, gone to bench, and had everyone show up on Zoom, you know?

The trial court ruled that Garcilazo could testify via Zoom.

Trial resumed on February 15, and opened with Garcilazo's testimony via Zoom. The record reflects that the Department conducted its direct examination of Garcilazo, and Father his cross-examination, without issue. And Father made no additional objections to Garcilazo testifying remotely. Garcilazo's testimony preceded that of five more Department witnesses, each of whom testified in-person. On February 16, the Department put on one final in-person witness and rested. Father did the same. The trial court submitted the case to the jury, which unanimously found that Father committed acts or omissions prohibited by family code § 161.001(b)(1), and that termination of Father's parental rights was in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O), (b)(2). The trial court adopted the jury's findings, appointed the Department permanent managing conservator of the children, and signed a final order of termination on March 13, 2023. This appeal followed.

## II.    Discussion

"A parent's right to 'the companionship, care, custody, and management' of h[is] children is a constitutional interest 'far more precious than any property right.'" *In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982)). "Because the natural right

3

between a parent and his child is one of constitutional dimensions, *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985), termination proceedings must be strictly scrutinized." *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). To terminate parental rights, the factfinder must find one of the grounds for termination specified in § 161.001(b)(1) of the family code and that termination is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(1), (2).[3]

To preserve an issue for appellate review, a defendant must present to the trial court a "timely request, objection, or motion" stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1(a); *see Johnson v. Harris*, 546 S.W.3d 293, 298 (Tex. App.—El Paso 2017, no pet.) ("[T]o preserve error a party should let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." (internal quotation marks omitted)). "The rules governing error preservation apply to civil cases involving termination of parental rights." *M.M.V. v. Tex. Dep't of Fam. & Protective Servs.*, 455 S.W.3d 186, 190 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (first citing *In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2005); and then citing *Tex. Dep't of Protective & Regul. Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001)). "Constitutional claims that are not raised with the trial court are not preserved for appellate review." *Id.* (citing *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003)). Allowing "appellate review of potentially reversible error never presented to a trial court would undermine the

---

[3] As noted, the jury found grounds for termination under family code § 161.001(b)(1)(D), (E), and (O), and that termination was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (b)(2). Father does not challenge these findings.

4

Legislature's dual intent to ensure finality in [parental termination] cases and expedite their resolution." *In re L.M.I.*, 119 S.W.3d at 708; *see also In re N.A.A.*, No. 13-18-00404-CV, 2018 WL 5074599, at *2 (Tex. App.—Corpus Christi–Edinburg Oct. 18, 2018, pet. denied) (mem. op.) ("Allowing appellate review of unpreserved error would undermine the Legislature's intent that cases terminating parental rights be expeditiously resolved, thus undercutting the child's interest in a final decision and placement in a safe and stable home.").

We have reproduced above the extent of Father's objections to the method of Garcilazo's testimony. Nowhere did Father state the specific grounds for prohibiting Garcilazo from testifying via Zoom. *See* TEX. R. APP. P. 33.1(a). Nor was his objection sufficient to imply his disapproval of Garcilazo's testimony via Zoom on the grounds that it violated his due process rights. *See id.* Instead, Father raised a general fairness objection and, perhaps, a veiled confrontation clause argument. *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ."). But Father's fairness claim was not sufficiently clear to preserve error on due process grounds, *see Johnson*, 546 S.W.3d at 298, and the confrontation clause is inapplicable in parental termination cases, which are civil matters. *See In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (concluding that parental termination is not retributive or punitive); *In re S.A.G.*, 403 S.W.3d 907, 912 (Tex. App.—Texarkana 2013, pet. denied) ("There is no constitutional right to confrontation in a civil proceeding." (cleaned up)); *see also J. T. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-15-00286-CV, 2015 WL 6459607, at *4 n.4 (Tex. App.—Austin Oct. 23, 2015, no pet.)

5

(mem. op.) (stating that confrontation clause does not apply in parental termination cases and collecting cases which state the same).

Because Father's due process claim was not preserved for appeal, we overrule his sole appellate issue. *See In re L.M.I.*, 119 S.W.3d at 711 (affirming the trial court's termination order where the father failed to preserve his sole claim on appeal that his due process rights were violated); *In re Baby Boy R.*, 191 S.W.3d 916, 922 (Tex. App.—Dallas 2006, pet. denied) (concluding that the father failed to preserve his constitutional claims for appeal in a termination case); *M.M.V.*, 455 S.W.3d at 190 (affirming the trial court's judgment in a termination case because the mother failed to preserve her only claim that she was denied her constitutional right to an interpreter); *see also In re N.A.A.*, 2018 WL 5074599, at *2 (affirming the trial court's judgment were the mother failed to preserve her sole appellate issue that her due process rights were violated because of her "inability to comprehend termination-related documents"); *cf. In re D.B.S.*, No. 05-20-00959-CV, 2021 WL 1608497, at *5 (Tex. App.—Dallas Apr. 26, 2021, pet. denied) (mem. op.) (concluding that "Mother's general reference to 'constitutional protections' was too vague and indefinite to preserve" her constitutional claim for appeal).

However, even if we were to conclude that error was preserved, to obtain reversal of a judgment based on trial court error, an appellant must show that the error probably caused rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the appellate court. TEX. R. APP. P. 44.1(a). In analyzing harm, Father reiterates his concern that the procedures the trial court implemented were arbitrary and fundamentally unfair, but he does not explain why the procedures either

6

"caused rendition of an improper judgment or probably prevented [him] from properly presenting the case to the appellate court." *See id.* In reviewing the record, we are persuaded that neither is true.

The Department called a total of seven witnesses. Garcilazo was the only witness to appear remotely. The Department explained that they needed her testimony "to prove up a document . . . . Not to go over the content again." The document in question is a one-page letter from Garcilazo detailing the various topics the children discussed in therapy and the children's progress. The letter primarily concerns the children's attitudes towards their biological mother. However, Garcilazo testified that she also recommended no visitation occur between the children and either biological parent. Garcilazo testified that this was "[b]ecause of the allegations that were presented by the—both of the girls." In her testimony, Garcilazo also discussed the substance of some of the outcries the girls made to her.

Nonetheless, several other witnesses also testified to the substance of the abuse allegations, and approximately sixty pages of written records concerning the abuse outcries were also admitted into evidence. Additionally, other witnesses discussed the children's progress since their placement in foster care and their attitudes towards visitation. Father does not argue on appeal that the admission of these witnesses' testimony was erroneous. Because Garcilazo's testimony was merely cumulative, we conclude that Father has not met his burden to show that the trial court rendered an improper judgment or that he was somehow prevented from presenting the case on appeal. *See Thawer v. Comm'n for Law. Discipline*, 525 S.W.3d 177, 184 (Tex. App.—

7

Dallas 2017, no pet.) ("The erroneous admission of evidence is harmless if it is merely cumulative.").[4]

### III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
10th day of August, 2023.

---

[4] We also note that Texas Rule of Civil Procedure 21d was in effect at the time of trial. TEX. R. CIV. P. 21d. This rule provides that a trial court may allow a witness to appear remotely, even without the parties' agreement, and even if the parties are ordered to appear in person. *See id.* R. 21d(a), (b), (d). Father does not contest the constitutionality of Rule 21d.