

**IN THE**
**TENTH COURT OF APPEALS**

**No. 10-19-00135-CV**

**IN THE INTEREST OF Z.B. AND S.B., CHILDREN**

**From the 12th District Court**
**Walker County, Texas**
**Trial Court No. 18-28762**

**MEMORANDUM OPINION**

In two issues, appellant, C.B. Jr., challenges the trial court's order terminating his parental rights to his twins, Z.B. and S.B.[1]  We affirm.

### I.  STANDARD OF REVIEW

In an involuntary termination proceeding brought under section 161.001 of the family code, the Department must establish:  (1) at least one ground under subsection (1) of section 161.001(b); and (2) that termination is in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001(b)(1)-(2) (West Supp. 2018); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

---

[1] The children's mother has not filed a notice of appeal challenging the termination of her parental rights to Z.B. and S.B.

Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a) (West Supp. 2018). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting the standards for termination and modification).

In evaluating the evidence for legal sufficiency in parental-termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all contrary evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* In other words, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable

factfinder could not. *Id.* We cannot weigh witness-credibility issues that depend on the appearance and demeanor of the witnesses, for that is within the province of the factfinder. *Id.* at 573-74. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are reasonable. *Id.* at 573.

In reviewing for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the factfinder's judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent committed the predicate ground alleged and that the termination of the parent-child relationship would be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(1); *see In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief in the truth of its finding, then the evidence is factually insufficient. *In re H.R.M.*, 209 S.W.3d at 108.

## II.   ANALYSIS

In his first and second issues, appellant challenges the sole predicate ground for termination under section 161.001(b)(1)(O) of the Family Code.[2] *See* TEX. FAM. CODE ANN.

---

[2] On appeal, appellant does not challenge the trial court's best-interest finding. Therefore, the trial court's best-interest finding is binding on this Court, and we need not address it in this memorandum opinion. *See IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997); *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *see also In re K.L.G.*, No. 14-09-00403-CV, 2009 Tex. App. LEXIS 8011, at *7 (Tex. App.—Houston [14th Dist.] Oct. 15, 2009, no pet.) (mem. op.) ("Appellant did not raise a challenge to the predicate ground in subsection Q or to the best-interest finding. Second, because they were

§ 161.001(b)(1)(O) (West Supp. 2018). Specifically, appellant contends, in his first issue, that the evidence was insufficient to establish the predicate ground for termination because the children were not removed for abuse or neglect. In his second issue, appellant asserts that the abuse or neglect predicate under section 161.001(b)(1)(O) cannot be based on risk alone, unless the Department identifies the specific risk and relates it to the current case.

To terminate parental rights pursuant to subsection (b)(1)(O), the Department must show that: (1) the child was removed under chapter 262 of the Family Code for abuse or neglect; (2) the child has been in the managing conservatorship of the Department for at least nine months; and (3) the parent "failed to comply with the provision of a court order that specifically established the actions necessary for the parent to obtain the return of the child." *Id.* On appeal, both of appellant's issues concern only the first element of subsection (b)(1)(O) regarding the removal of the children for abuse or neglect. Because both issues relate to the same element, they will be addressed together.

At the outset, we address appellant's contention that the abuse or neglect requirement under subsection (b)(1)(O) cannot be based on risk alone. The Texas

---

unchallenged, findings supporting termination of appellant's parental rights to K.L.G. are binding, and no review of the other predicate grounds or the best-interest finding is necessary." (citing *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003))).

Supreme Court has held that the language "abuse or neglect of the child," as used in subsection (b)(1)(O),

> necessarily includes the risks or threats of the environment in which the child is placed. Part of that calculus includes the harm suffered or the danger faced by other children under the parent's care. If a parent has neglected, sexually abused, or otherwise endangered her child's physical health or safety, such that initial and continued removal are appropriate, the child has been 'remov[ed] from the parent under Chapter 262 for the abuse or neglect of the child.

*In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013) (internal citations omitted). Therefore, in evaluating abuse or neglect under chapter 262, "risks" or "threats" of the environment in which the child is placed, as well as the harm or danger suffered by other children under the parent's care, can be considered. *See id.* As such, we reject appellant's suggestion that the abuse or neglect requirement under subsection (b)(1)(O) cannot be based on risk of harm to the twins alone.[3] *See id.*

---

[3] Appellant also argues that the Texas Supreme Court's recent decision in *In re N.G.* requires this Court to examine the elements of termination under subsections (b)(1)(D) and (b)(1)(E) because of the potential consequences for parental rights of a different child. *See In re N.G.*, No. 18-0508, ___ S.W.3d___, 2019 Tex. App. LEXIS 465 at *8 (Tex. May 17, 2010) (per curiam) ("When due process requires the heightened standard for termination of parental rights by clear and convincing evidence, it follows that due process also requires a heightened standard of review of a trial court's finding under section 161.001(b)(1)(D) or (E), even when another ground is sufficient for termination, because of the potential consequences for parental rights to a different child."). However, the *N.G.* holding only applies when a parent's parental rights are terminated on more than one ground and one of those grounds is subsection (b)(1)(D) or (b)(1)(E). *See id.* at *8 ("A parent may be denied the fundamental liberty interest in parenting only after they have been provided due process and due course of law, and terminating parental rights based on a challenged, unreviewed section 161.001(b)(1)(D) or (E) finding runs afoul of this principle. When a parent has presented the issue on appeal, an appellate court that denies review of a section 161.001(b)(1)(D) or (E) finding deprives the parents of a meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children.").

In the instant case, the trial court terminated appellant's parental rights on one ground—subsection (b)(1)(O). Because the trial court did not also terminate appellant's parental rights under subsections

We now turn to appellant's sufficiency argument. As noted above, appellant argued that the evidence is insufficient to support the predicate ground for termination under subsection (b)(1)(O) because the twins were not removed for abuse or neglect. We disagree.

In the instant case, Elaine Brown, a CASA supervisor, testified that appellant and the children's mother have five children in total, including the twins in this case. The recent history of appellant's actions with regards to his three older children evidences the risk of abuse and/or neglect appellant posed to the twins, if they remained in the home. Indeed, at trial, it was revealed that the three older children were all subjects of prior Department cases, demonstrating that appellant and the children's mother have been involved with the Department for many years. In fact, the Department first became acquainted with the family in July 2014, with the first child due to allegations of substance abuse and domestic violence. That case closed in April 2015, when the mother completed

(b)(1)(D) or (b)(1)(E), we need not address any potential grounds for termination under subsections (b)(1)(D) and (b)(1)(E). *See id.* at **13, 18. Nevertheless, whether the abuse or neglect "calculus" involved in analyzing the predicate termination ground under subsection (b)(1)(O) necessarily involves a similar analysis with similar implications as subsections (b)(1)(D) and (b)(1)(E) is an open question that has not been resolved by the Texas Supreme Court. Without more authority on the issue, we are not inclined to agree with appellant at this time. And insofar as appellant raises a constitutional claim on appeal, we note that such a claim was not preserved for appellate review. *See* TEX. R. APP. P. 33.1(a); *In re B.L.D.*, 113 S.W.3d 340, 353-55 (Tex. 2003) (concluding that allowing appellate review of unpreserved error would undermine the Legislature's intent that cases terminating parental rights be expeditiously resolved, thus "promoting the child's interest in a final decision and thus placement in a safe and stable home"); *see also In re L.M.I.*, 119 S.W.3d 707, 710-11 (Tex. 2003) (holding that a terminated father waived a due-process argument by failing to raise it in the trial court); *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 860-61 (Tex. 2001) (holding that an alleged biological father who sought to establish paternity waived constitutional error, even though it was undisputed that father had received no notice or a hearing on the prior paternity adjudication that created the bar).

services and filed for a protective order against appellant, who was incarcerated in New Mexico after being extradited from Walker County, Texas.

The Department received another referral with regard to the first child in March 2016, on the basis of substance abuse and domestic violence between the parents and in the presence of the child. During the Family Team Meeting, appellant tested positive for methamphetamine and amphetamine and fled with the first child. In April 2016, the Department intervened after the couple's second child tested positive for methamphetamine and amphetamine. Ultimately, these two children were placed with a maternal cousin.

In May 2017, the Department received an intake and conducted an emergency removal after the couple's third child tested positive for opiates when she was born. The mother reported codeine and alcohol abuse during her pregnancy. She also admitted to smoking cigarettes during this pregnancy. This child is subject to another termination proceeding that is still pending.

The record at trial revealed that these three children remained in the Department's care without any plans to return them to appellant or the children's mother because neither were compliant with their service plans and both tested positive for drugs in August 2017—the last drug test to which they submitted during those cases. Furthermore, the affidavit supporting removal of the children listed appellant's criminal

history, which spanned almost forty years and included convictions for burglary, robbery, driving while intoxicated, and charges of domestic assault.

The twins, which are the subjects of this proceeding, were born in April 2018. Because CPS was not aware of the birth of the twins, they were not drug tested when they were born. Nevertheless, the twins were born premature at thirty-one weeks gestation, and the hospital advised that they would need close follow-up appointments to ensure appropriate weight gain. The twins also have positional plagiocephaly, which is the abnormal roundness of their heads and requires helmets for treatment, and breathing issues that require breathing treatments all of the time.

Christina Vaughn, a CPS caseworker, noted that, with regard to the twins, an investigation was opened in Galveston, Texas, when appellant locked himself out of his hotel room with one of the twins inside the room when he went outside to smoke a cigarette. Appellant became angry and aggressive with a hotel maid when she would not let him back into the room, and the police were eventually called.

Galveston CPS contacted Huntsville CPS, which performed an investigation and visited the home of appellant and the children's mother. Huntsville CPS employee Bianca Davis investigated the home and found that appellant and the children's mother could not provide the necessities for the newborns. The home did not have a safe place for the children to sleep. Additionally, the home had one bedroom and a small pathway to walk from the parents' bedroom to the kitchen. The reason for the small pathway was

that the home was littered with couches, mattresses, televisions, boxes, and numerous other items. Davis testified that the mess in the home was hazardous to the children. She further testified that there was a crib in the bedroom, but that it was broken, leaning, and did not have a mattress pad. Moreover, the home smelled like animal urine, and there were seven or eight cats in the house. Davis opined that the home environment was not appropriate or safe for the twins, and that the Department has significant concerns about appellant and the children's mother due to their past drug-use and the fact that the children's mother was going to jail on the following Saturday for a crime that she had committed.

Later in her testimony, Davis stated that the Department gave appellant and the children's mother "time to even clean the home, but they wouldn't provide any other placement options at the time." The Department also allowed appellant and the children's mother to relocate to a hotel with the children due to the home environment, but the parents refused to sign a safety plan. Appellant and the children's mother also declined the Department's offer to provide appropriate bedding for the children. Davis recounted that she went back to the home several times, and appellant was either not home or did not answer the door. Therefore, Davis was unable to go inside and see the home again after the initial visit.

Vaughn testified that the "parents are inconsistent. . . . Services or communication, they have changed phone numbers a lot, they have lack of transportation which they

blame for the reasons that they're unable to complete services or do anything or come see their children."[4] With regard to his family service plan, appellant was required to obtain housing and employment; participate in a "drug and alcohol assessment, random drug testing, psychological, therapy, anger management, and then efforts to engage in his services too which is communicating with [Vaughn]." Appellant only completed the drug and alcohol assessment. Appellant had numerous opportunities to take drug tests; however, due to various excuses, appellant was not drug tested during this case. Vaughn later stated that the twins were removed due to the appellant and the children's mother's history of drug use, domestic violence and prior Department cases, and their inability to provide a safe home for the children.

Applying the appropriate standards of review, we conclude that the evidence is legally and factually sufficient to support a firm conviction or belief that the twins were removed from appellant under chapter 262 for abuse or neglect and that they faced a substantial risk of continuing danger if they remained in the home. *See id.*; *see also In re H.R.M.*, 209 S.W.3d at 108; *In re J.P.B.*, 180 S.W.3d at 573; *In re C.H.*, 89 S.W.3d at 28. Indeed, the evidence demonstrated appellant's neglect of the twins' physical needs and need for a safe living environment, as well as appellant's explosive behavior, his history of substance and domestic abuse, his unwillingness to separate from the children's

---

[4] Despite being properly notified, appellant did not attend the final hearing where his parental rights to the twins were terminated.

mother who also engaged in behaviors that are endangering to the children, his refusal to cooperate with the Department, and his involvement with the Department regarding harm suffered by appellant's three other children. *See In re K.N.D.*, 424 S.W.3d 8, 10 (Tex. 2014) (noting that "a reviewing court may examine a parent's history with other children as a factor of the risks or threats of the environment" and concluding that K.N.D. was removed for abuse or neglect under chapter 262 of the Family Code where the mother had relinquished her parental rights to another child with whom she had a history of "neglectful supervision" and "medical neglect," had been involved in a domestic dispute with her roommates shortly before giving birth to K.N.D., and may have been a prostitute); *In re E.C.R.*, 402 S.W.3d at 248; *see also In re C.C.*, No. 10-16-00129-CV, 2016 Tex. App. LEXIS 12277, at *32-37 (Tex. App.—Waco Nov. 16, 2016, no pet.) (mem. op.) (concluding that subsection (b)(1)(O) can be satisfied by risk of abuse or neglect, which applied to the removal of mother's children because the mother tested positive for methamphetamine shortly before the children's removal, the mother had a history of drug abuse, and because mother exposed the children to domestic violence); *In re T.W.*, No. 05-16-00232-CV, 2016 Tex. App. LEXIS 6577, at **14-16 (Tex. App.—Dallas June 21, 2016, pet. denied) (mem. op.) ("Given the open CPS cases involving the other children, the allegations involved [one of the children tested positive for marihuana at birth and the four other children were exposed to domestic violence], and appellant's refusal to cooperate with the Department in locating T.W. to ensure she was safe, we conclude the

evidence was sufficient to show that T.W. was at 'substantial risk' of abuse or neglect.").

Accordingly, we overrule both of appellant's issues on appeal.

## III.   CONCLUSION

Having overruled all of appellant's issues, we affirm the judgment of the trial court.


JOHN E. NEILL
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
(Chief Justice Gray concurring with a note)*
Affirmed
Opinion delivered and filed September 11, 2019
[CV06]


*(Chief Justice Gray concurs in the Court's judgment.  A separate opinion will not issue. He notes, however, that much of the evidence discussed in the opinion is not pertinent to the issue presented.  It is only the evidence of abuse or neglect that existed at the time of removal that is relevant to the issues challenged on appeal.  But there is more than enough evidence to hold that the State proved by clear and convincing evidence that the twins were removed due to abuse or neglect.  What happened thereafter is irrelevant to that element of the predicate ground that is challenged on appeal, but is obviously relevant to other issues, namely whether termination of parental rights is in the best interest of the children, which is not challenged on appeal.  With these comments, Chief Justice Gray concurs in the Court's judgment that affirms the trial court's judgment of termination of the father's parental rights.)

